The complainants are judgment creditors, having obtained judgments against the defendant Public Service Cab Company *Page 390 
on October 23d 1928; the amount of the judgment of Ida M. Chorpenning is $15,000 and $92.72 costs, the amount of the judgment of Ralph M. Chorpenning is $495 and costs. The sum of $5,000 was paid on account of these judgments in partial satisfaction by the Jersey Mutual Insurance Company, the insurer of the Public Service Cab Company, in full discharge of the insurer's obligation under the policy of insurance issued to the Cab Company. The suit which resulted in these judgments was commenced December 23d 1927, and had its foundation upon an accident which took place on October 13th, 1927, when the complainant Ida M. Chorpenning was struck by a taxicab of the defendant Public Service Cab Company resulting in her injury. She was an infant and her father, Ralph M. Chorpenning, the other complainant, brought suit as her next friend, as well as individually. The complainants became creditors on October 13th, 1927, the date of the commission of the tort. Babirecki v.Virgil, 97 N.J. Eq. 315.
Public Service Cab Company, a New Jersey corporation, operated a taxicab business in the city of Camden at the time of this accident; George Falkenstein was its general manager and president, and Philip Messina was its secretary. Some time in the year 1928 the Public Service Co-ordinated Transport, through its attorney and agent, Patrick H. Harding, one of the defendants, acting through one Charles A. Aceto, entered into negotiations for taking over the business and property of the Public Service Cab Company; as a result of the negotiations between Aceto and the Public Service Cab Company, an agreement was executed dated April 4th, 1928, between that company and Aceto by which the company, in consideration of $500, gave Aceto the exclusive option for the period of thirty days to purchase its good will, franchises, rights, privileges and equipment, for the purchase price of $29,000. As this agreement was originally drawn it omitted "franchises, rights, privileges;" these words afterwards were inserted. The execution of this agreement on behalf of the Public Service Cab Company was authorized at a meeting of the board of directors held April *Page 391 
3d 1928, it appears by the minutes. On May 3d 1928, at another meeting of the directors of the Cab Company, there was recorded: "On word from Charles A. Aceto that he was ready to close deal to purchase Public Service Cab Company a suggestion was made by Joseph Trombetta and duly seconded by Harry Yaeger to have all stock at office of Charles A. Aceto, 325 Arch street, Camden, New Jersey, this afternoon of May 3d 1928, at 4 P.M."
The settlement took place on the afternoon of May 3d 1928, at which time Mr. Aceto was present, together with Mr. Falkenstein, the president and manager of the Cab Company, and Mr. Harding, attorney and agent of the Public Service Co-ordinated Transport. Mr. Harding at that time made inquiry to ascertain the creditors of the Cab Company. A settlement was made in accordance with the agreement. The memorandum of settlement showed the withholding of a number of items representing claims of creditors of the Public Service Cab Company aggregating $17,009.97. Two other claims were shown on this settlement, each for $500, and the memorandum of settlement showed a balance of $10,990.03. At the time of the settlement there was delivered to Mr. Harding by Mr. Falkenstein, numerous certificates of stock of the Public Service Cab Company. So far as it appears, all of the issued stock of the company, which was endorsed in blank was turned over to Mr. Harding with the various bills of sale and contracts for the purchase of taxicabs made by Public Service Cab Company. Mr. Harding delivered his check to the order of the Public Service Cab Company dated May 2d 1928, for $10,990.03, which was a balance shown upon the memoranda of settlement. Numerous other checks were drawn by Mr. Harding to various creditors of the company during the months of May and June of that year; and there were three other checks drawn by Harding to Public Service Cab Company, one dated May 5th for $500; one May 7th for $4,000, and another June 29th for $659.67. On May 10th, 1928, there are minutes of two meetings, one held for resignation of officers, showing resignations of all the old officers of the company and their acceptance. The *Page 392 
other meeting is designated as a meeting of the Public Service Cab Company at the office of Mr. Harding, there being present a majority of the directors of the company for resignation of the officers; at that meeting Patrick H. Harding, Thomas Comerford and Mildred Elkins were elected directors, and Patrick H. Harding president and Thomas Comerford secretary and treasurer of the company; and also that Patrick H. Harding be named as solicitor and authorized to prepare the necessary papers to dissolve the company.
On June 9th, 1928, there is a minute of another meeting at which were present Patrick H. Harding, Thomas Comerford and Mildred Elkins, the directors, and at which the solicitor reported he had made the necessary application to dissolve the company and that the certificate of dissolution should be received by the company in a day or so. There is a minute on June 23d 1928, of another meeting of the directors of the Public Service Cab Company held at the office of Mr. Harding with Patrick H. Harding, Thomas Comerford and Mildred Elkins present, at which Mr. Harding reported that the certificate of dissolution of the company dated June 23d 1928, had been received by the company and that the necessary advertising had been ordered to complete the dissolution. These are the only recorded minutes of this company bearing upon this transaction and the affairs of the company after the stock was taken over by Mr. Harding.
Mr. Falkenstein, the general manager of the Public Service Cab Company, was fully acquainted with the suit for damages pending against this company at the time of these transactions, and at the hearing in this cause there were produced two letters written by him to the insurance company referring to these cases. However, he testified that he had completely forgotten about theChorpenning Case at the time this settlement was made and when inquiry was made of him as to the creditors of the company. However, the Chorpenning Case was defended on behalf of the company by the attorney of the insurer, Jersey Mutual Insurance Company, and was of such a nature, judging by the amount of the *Page 393 
verdict, that should have elicited the continued interest of the general manager of the company, particularly when its limit of indemnity was $5,000 and the company would be called upon to be responsible for any judgment above that amount. In addition to Mr. Falkenstein's knowledge of the pending damage suits, Mr. Harding, having taken over all of the capital stock of the company and had himself elected president, together with a representative of the Public Service Co-ordinated Transport, Mr. Comerford, as secretary and treasurer, and being entitled to the physical possession of all the books, papers and records of the company, could have readily ascertained that this suit was pending. Further than that, this information could have been obtained readily by an examination of the dockets in the law courts in which such suits might be brought.
The money used in carrying out this transaction was the money of Public Service Co-ordinated Transport; Mr. Harding was merely acting as its agent and attorney; the Public Service Cab Company was a competitor, and the Public Service Co-ordinated Transport was interested in getting rid of this competition.
The contention of the defendants is that it was only intended to acquire the physical property and equipment of the Public Service Cab Company and that the acquisition of the stock of this company was not a part of the transaction, the stock having been delivered to Mr. Harding as a gift. This contention is hardly tenable in face of the agreement entered into between the company and Aceto by which it was made plain that the franchises, rights and privileges were included. As I have said, these items were actually inserted in the agreement after it was prepared, and the minute of April 3d 1928, to which I have referred, indicates that authority was given to Aceto to buy the Public Service Cab Company; the minute of May 3d 1928, referred to the production of all the stock. In addition, there was no transfer of the physical property and equipment, and therefore the title at time of the settlement and for over three months afterward, remained in the Public Service Cab Company. No *Page 394 
effort was made at the time of the settlement to comply with the Bulk Sales act by furnishing a list of the creditors of the Public Service Cab Company, and the method by which the whole transaction was carried out by Mr. Harding first by giving checks to individual creditors and then by giving other checks to the Public Service Cab Company, of which he and his associates appeared to be the sole owners representing the Public Service Co-ordinated Transport by reason of the delivery of the stock, indicates that the purpose was to pay off the claims of creditors and have the over-plus go to the stockholders of the Public Service Cab Company. Mr. Harding contented himself with drawing a check to the order of Public Service Cab Company on the day of settlement while he at that time became the owner by delivery of all the stock of the company. Therefore he must have known that such payments as he made in this manner were intended for the stockholders of the Public Service Cab Company.
It was the plain duty of Mr. Harding or that of the Public Service Cab Company to have settled all claims of creditors, including that of the complainants in this cause, before any distribution to stockholders; the rights of the latter were entirely subservient to those of the creditors. When this company was taken over by Mr. Harding for Public Service Co-ordinated Transport, its officers and directors could not escape the duty which they owed to properly administer its affairs. Dissolution proceedings were had, as noted by the minutes; these proceedings were carried on in a rather perfunctory manner and while there was a certificate of dissolution issued by the secretary of state, the officers of the company apparently did not consider that the company had been dissolved and that the members of the board of directors became trustees in dissolution, because on July 7th, 1928, two weeks after the certificate of dissolution had been issued, Mr. Harding, as president, and Mr. Comerford, as secretary, executed on behalf of and in the name of the Public Service Cab Company, written transfers to Yellow Cab Company of Camden, a corporation, of the taxicabs of the company. The consideration named in these transactions was $1. There *Page 395 
were no minutes of the Public Service Cab Company authorizing the execution of these transfers.
The Yellow Cab Company is a corporation of New Jersey and also was a competitor of Public Service Co-ordinated Transport; Mr. Harding was delegated as attorney and agent of the Public Service Co-ordinated Transport to acquire that company also. An examination of the minutes of the Yellow Cab Company shows that on May 3d 1928, a meeting of the board of directors was held, at which time Mr. Harding was elected a director and president of the company in place of Frank O. Stem, who resigned. Mr. Charles A. Ihle was elected treasurer to succeed Mr. Stem, and Richard Curtis resigned as vice-president. There were no other minutes of that meeting except the direction to open up a bank account. There are no minutes of the Yellow Cab Company authorizing the purchase of the property and equipment of Public Service Cab Company. There are no further minutes of the company recorded until a meeting of the board of directors held October 3d 1928, and none of the minutes of meeting held thereafter refer to the transactions involving the purchase of the equipment of the Public Service Cab Company. The testimony discloses that these taxicabs and other property referred to in the bills of sale were taken over by Yellow Cab Company; some of the taxicabs were still in use by the Yellow Cab Company at the time of hearing of this cause but were of very little value; the others have a value as junk only.
It is the contention of the complainants that the transfer of all of the physical property of the Public Service Cab Company to Yellow Cab Company was without consideration and therefore fraudulent and void under the Uniform Fraudulent Conveyance act. With this contention I agree. There is nothing in the evidence which discloses the payment of any consideration by Yellow Cab Company to Public Service Cab Company.
The defendants are attacking the right of the complainants to maintain their bill because of the fact that the complainants' judgment was obtained against the Public Service *Page 396 
Cab Company after its dissolution and without notice to the trustees in dissolution. If there were trustees in dissolution, it would seem that they were the defendants Patrick H. Harding, Thomas Comerford and Mildred Elkins, who appear to have been the directors at the time of the issuance of the certificate of dissolution, although it is disclosed that in a report filed with the secretary of state, two others were named as directors, viz., Thomas M. Madden and Jack A. Goldstein. I find nothing in the company's records however which shows that either one of the latter two gentlemen was elected a director. If the minutes of the corporation are to be relied upon then there were only the three directors I have mentioned and they would constitute the trustees in dissolution. These were the three directors elected at the time the stock was taken over at the Aceto settlement. As directors and officers of the company they are charged with full knowledge of its affairs and of the fact that the Corpenning suit was pending and that the company was represented by an attorney in this suit. I do not feel that these judgments are open to attack in this court by reason of the alleged failure to give notice to these trustees. If they are open to attack, the attack should have been made in the court in which the suit was pending. It seems clear to me that I should recognize the complainants' judgments as valid so far as the purposes of this suit are concerned. The defendant Patrick H. Harding, the attorney and agent of the Public Service Co-ordinated Transport, constituted himself president of both the Public Service Cab Company and Yellow Cab Company; as president of the Yellow Cab Company he had, by reason of his connections with the Public Service Cab Company, knowledge of all the transactions relating to the acquisition of the latter company. The certificate of dissolution filed by the Public Service Cab Company was signed by Patrick H. Harding, Thomas J. Comerford and Jack I. Goldstein, who certified that they were all the stockholders of that company, yet the minutes and the testimony indicate that Mildred Elkins was also a stockholder, otherwise she could not have remained a director as disclosed by the annual report filed by the company with the secretary *Page 397 
of state; I might say that in addition to the persons I have mentioned, Thomas M. Madden is also certified in that report to be a director. At least, therefore, the dissolution proceedings did not comply with the statute because of the failure of the certificate of dissolution to contain the consent of all the stockholders of the company.
It may be contended that the purchase of the physical property and equipment of the Public Service Cab Company by Mr. Harding on behalf of the Public Service Co-ordinated Transport, was the consideration for the transfer of this property to Yellow Cab Company. However, the facts surrounding the transactions between Mr. Harding and the Public Service Cab Company are such as to overcome this contention because, as a matter of fact, what he took over was the stock of the company, taking with it all of its physical property, and paying such over-plus as he thought there was above the debts, indirectly but actually to the stockholders of the company by making out a check to the Public Service Cab Company the stock of which he became possessed. The Yellow Cab Company having had notice of these transactions in the manner in which I have stated, and the property transferred to it having been reduced practically to junk value, and it appearing that this property at the time of its transfer was worth more than the complainant's judgments, the defendant Yellow Cab Company should be liable for the payment of the complainants' judgments, interest and costs. It would be inequitable to permit a creditor to be deprived of the right to the assets of the judgment debtor by reason of the shifting of property of the debtor as in this case.
I do not think it necessary to appoint a receiver for the Public Service Cab Company for the reason that there appear to be no creditors other than the complainants herein and no others interested so far as is disclosed. The Yellow Cab Company is primarily responsible because it received the benefit of the transfer of this property to it without consideration. The three defendants Patrick H. Harding, Thomas J. Comerford and Mildred Elkins, the directors of the Public Service Cab Company and its trustees, if there was a legal *Page 398 
dissolution, are responsible for having permitted the transfer of this property without consideration and will be held secondarily liable.
The theory of primary liability is supported by Purchase v.Atlantic Safe Deposit and Trust Co., 81 N.J. Eq. 344. In that case, Vice-Chancellor Leaming said:
"The corporation having received no benefit from the payment, and the director having received the sole benefit, the liability for the return of the money should, in equity, be primarily cast upon the director, and secondarily on the corporation."
In this case the Yellow Cab Company received the sole benefit of these taxicabs and equipment assigned to it by Public Service Cab Company and therefore is primarily liable. The three defendants whom I have named, are secondarily liable because of their failure to perform their legal duties either as directors, or trustees in dissolution.
I will advise a decree in accordance with these conclusions. *Page 399