100 N.J. Super. 186 (1968)
241 A.2d 471
GEORGE J. JACKSON, PLAINTIFF,
v.
DIAMOND T. TRUCKING COMPANY, A CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided March 8, 1968.
*188 Mr. Seymour B. Jacobs for plaintiff (Balk, Jacobs, Goldberger & Mandell, attorneys).
Mr. Frederick A. Frost for defendant (Pitney, Hardin & Kipp, attorneys).
PINDAR, J.S.C.
The issues presented to the Court come before it on motion for summary judgment, R.R. 4:58 et seq. The motion is supported by the pleadings, affidavits, depositions, admissions, answers to interrogatories and certain agreements, the contents of all of which shall be adverted to in the course of this opinion.
Plaintiff, George J. Jackson was an employee of Phillips Specials (Phillips), a New Jersey corporation, wholly owned, however, by a Missouri corporation, Ujay, Inc. (Ujay) which was licensed to do business in this State. Plaintiff sustained a compensable work-related injury for which he received a workmen's compensation award against Phillips for $7,254.21. This award was docketed in the Hudson County Clerk's office on November 9, 1966, pursuant to R.S. 34:15-58, and later docketed in the Superior Court on November 23, 1966. The award has not been appealed, nor has it been paid.
Phillips was a trucking company whose principal place of business was on Fisk Street, Jersey City, where its terminal facilities were located. It had as its principal asset an interstate trucking franchise issued by the Interstate Commerce Commission (I.C.C.).
One Wallace T. Taylor desired to acquire the franchise for Diamond T. Trucking (Diamond T), the defendant herein, a Delaware corporation, then with principal place *189 of business in Philadelphia, Pa. Taylor was president, director and principal stockholder of Diamond T.
To effect his purpose Taylor entered into a contract with Ujay to purchase all the capital stock and assets of Phillips. Ujay was owned and controlled by two principal stockholders, William B. Cox and David H. Schleuter, the former acting as secretary-treasurer, the latter as president-vice president of Ujay. Cox and Schleuter were also officers and directors of Phillips.
The contract of sale and its supplementary agreement were executed in St. Louis on March 31, 1966. In the contract Taylor was named as the buyer, although provision was made for the assignment and transfer of the rights and assets covered by the contract to Taylor's corporate nominee, Diamond T. The contract contained the following highlights: $100,000 consideration for the Phillips stock; $12,436 in consideration for its assets; an $80,000 promissory note executed or to be executed by Diamond T and guaranteed by Taylor individually; the creation of a seller's security interest in the I.C.C. operating authority; seller's permission to liquidate, merge or consolidate Phillips; resignations by Phillips' old officers and directors, and releases by them of any claims they might have against the corporation. Ujay further agreed to pay all debts and liabilities of Phillips of any kind, absolute or contingent, existing on the date of closing, March 31, 1966. Furthermore, Ujay agreed to indemnify and save Taylor harmless from all actions, suits, proceedings, demands, assessments, judgments, costs and expenses incident to any failure of Ujay in fulfilling any terms of the sale contract. Attached to the contract and made a part thereof was "Exhibit D" which listed certain outstanding obligations of Phillips. Included on Exhibit D was plaintiff's compensation claim beneath which Ujay declared its obligation to accept all liability with regard thereto. Finally, the contract was to be governed by the law of Missouri.
Taylor's deposition shows that he operated Phillips until March 7, 1967 when the I.C.C. approved the transfer of the *190 interstate franchise to Diamond T. (Apparently, the I.C.C. originally approved the transfer before the compensation award was rendered as appears from a copy of an I.C.C. order dated September 12, 1966 attached to the moving papers. Plaintiff intervened in these proceedings which probably accounts for the delay in obtaining final approval.)
Taylor's deposition also reveals that he had actual knowledge of plaintiff's claim at the time he purchased the Phillips stock. After the franchise was transferred, all the trucks and other operating equipment were registered in Diamond T's name in Pennsylvania. All operations hitherto performed by Phillips were then and are now performed by and under the name of Diamond T. Phillips has no assets in New Jersey and no longer conducts any activities although it has not been statutorially dissolved because, as Taylor says, "I was kind of worried about putting it to sleep until everything was squared away." Although Diamond T now has title to all Phillips' assets and is now operating from the Jersey City terminal facilities, no consideration was paid by Diamond T to Phillips, as is revealed by Taylor's statement that he simply let Phillips' checking account deplete itself after he transferred all the assets.
Before discussing the applicable law, it should be noted that this action has been commenced in the Law Division of the Superior Court against Diamond T. Taylor, Phillips and Ujay are not named in this action and, therefore, nothing in the nature of a personal judgment can be rendered against them.
Plaintiff asks this Court to render a judgment of liability with interest and costs against Diamond T for the workmen's compensation award rendered against Phillips. Plaintiff's theories of recovery are three in number. First, plaintiff asks the Court to pierce Diamond T's corporate veil; or, secondly, find that Diamond T is a continuation in law and fact of Phillips; or, thirdly, to view this proceeding as a garnishment of the indebtedness assumed by Diamond T and owing Ujay for the Phillips stock. The Court feels that the *191 first theory is a procedure generally within the Chancery Division's practice and would be inclined to transfer the case on its own motion were it clear that plaintiff does not also assert a right cognizable at law. See R.R. 4:41-3. See also, O'Neill v. Vreeland, 6 N.J. 158, 165-166 (1951). As to the garnishment theory, the Court feels such relief would be premature without a full hearing regarding the debt created by the contract and potentially governed by Missouri law. In this light, the Court considers the second expressed theory as a grounds for judgment herein.
While the Court has found New Jersey cases whose facts are sufficiently analogous so as to govern a disposition of the case at bar, none could be found which are direct authority for the theory advanced herein. The law of New Jersey might be considered well settled but unclear in resolving the issue presented. It also seems apparent that there are no theories of recovery as such, but rather factual descriptions or conclusions which have been thought to entitle various kinds of creditors to relief. In this regard, plaintiff's principal claim for relief is for a judgment of individual liability against Diamond T and this Court thinks it is properly brought in the Law Division. Confusion arises, however, from the fact that most of the reported cases have been brought in equity courts. But see, Parsons Mfg. Co. v. Hamilton Ice Mfg. Co., 78 N.J.L. 309 (Sup. Ct. 1909). This Court agrees with the Louisiana Supreme Court which said in a case not entirely dissimilar to the one at bar that "* * * the properties of a corporation constitute a trust fund for the payment of its debts; and that, where there has been a misappropriation of such funds, or * * * the corporation has been divested thereof by consolidation, merger, reorganization, or `reincarnation,' not only may the fund be followed, by the aid of equity, for the benefit of the creditor, but he may recover, in an action at law, against the corporation which has taken over such fund, with the business of his debtor." Wolff v. Shreveport Gas, Electric Light and Power Co., 138 La. 743, 70 So. 789, 794, L.R.A. *192 1916 D. 1138 (Sup. Ct. 1916). In any event, because in our practice law and equity have been merged, and because the problem here is fairly susceptible to either characterization, the Court will retain the case in this division for purposes of this motion.
No New Jersey case appears to have been called upon to make a comprehensive statement of the law in the area under investigation, but by weight of reason and authority this Court feels our State would adopt Fletcher's formulation, i.e.,
"Generally where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, except: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporation; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts." 15 Fletcher, Cyc. Corporations, § 7122, p. 187 (1961 Perm. Ed.)
To the same effect, 15 A.L.R. 1112, 49 A.L.R. 788; 19 Am. Jur.2d, § 1546, pp. 923-4; 19 C.J.S. Corporations § 1630d.
Not to be overlooked are five older New Jersey cases (referred to before) which, though not authority for the proposition advanced herein, would be dispositive had plaintiff sought a different kind of relief. Couse v. Columbia Powder Mfg. Co., 33 A. 297. (Ch. 1895) (not officially reported); Parsons Mfg. Co. v. Hamilton Ice Mfg. Co., supra; Chorpenning v. Yellow Cab Co., 113 N.J. Eq. 389 (Ch. 1933), affirmed, 115 N.J. Eq. 170 (E. & A. 1933); Aetna &c. Co. v. International &c. Corp., 117 N.J. Eq. 190 (Ch. 1934); Fox v. Radel Leather Mfg. Co., 121 N.J. Eq. 291 (E. & A. 1936). Compare, Schmoele v. Atlantic City R.R. Co., 110 N.J. Eq. 497 (E. & A. 1932). None of the foregoing cases, however, give unquestioned support to plaintiff's proposition that a transferee corporation is responsible for the liabilities *193 of its transferor whenever the transferee continues the business operations of the transferor with the latter's assets. Nor is the Court prepared to adopt such a sweeping statement, when, indeed such a conclusion is unnecessary for the correct disposition of this case.
In Couse v. Columbia, supra, plaintiff, an attaching creditor of Columbia, brought an order to show cause why a conveyance of all the stock and assets of Columbia to Maxim Corp. should not be set aside as a fraudulent conveyance. Maxim and Columbia had common directors, officers and stockholders. In consideration for the transfer Maxim issued its stock to Columbia's stockholders in addition to giving its promise to pay all of Columbia's debts. The Court found that in effect the issuance of Maxim stock was a distribution of Columbia's assets and further that Maxim was not a purchaser in good faith. Maxim was held to hold Columbia's assets in trust for the benefit of plaintiff.
In Chorpenning v. Yellow Cab Co., 113 N.J. Eq. 389, supra, plaintiff was a judgment creditor of Public Service Cab Company. One Harding, as agent for and with money from Public Service Coordinated Transport, purchased all the capital stock of the Public Service Cab. Co., thereafter, as president, paying several creditor's claims, excluding however, the plaintiff's which at the time had not been reduced to judgment. Thereafter, the Public Service Cab Company was legally dissolved, subsequent to which plaintiff obtained his judgment. Harding was, thereafter, elected president and director of Yellow Cab Company of Camden, again acting as agent for Public Service Co-Ordinated Transport, which was anxious to eliminate competition. Harding, apparently acting as trustee in dissolution for Public Service Cab Company transferred all its capital assets to Yellow Cab Company for $1.00. The Court there held that the conveyance was without consideration under the Uniform Fraudulent Conveyance Act (no citation given) and that Yellow Cab Company was primarily liable for the full amount of plaintiff's judgment despite the fact that at that *194 time the assets transferred were of nominal or junk value. Interest and costs were awarded.
In Aetna Casualty Co. v. International Corp. supra, Liberty Insurance Co. transferred all its assets to Independence Insurance Company for "one dollar and other good and valuable consideration," which other consideration was the exchange by Liberty stockholders of their stock for Independence stock, in effect a dissolution of Liberty. Despite the fact that Liberty had obtained re-insurance with International Insurance Corp. for its contingent liabilities, the Court found that among other things, the transfer of assets was both a common law fraud and a fraudulent transfer under Uniform Fraudulent Conveyance Act. Since International knew through its president and directors of the fraudulent transfer between Liberty and Independence, the Court impressed a trust on the assets received by International in favor of Liberty's creditors.
In Parsons Mfg. Co. v. Hamilton Ice Co., supra, plaintiff was a seller who sued for the balance due on a promissory note allegedly assumed by defendant's successor corporation. The note in suit was signed by one Armstrong as treasurer of the predecessor. Subsequent to the execution of the note Armstrong and one McDougall, a manager of the old company, formed The Hamilton Ice Co., the difference in form being the addition of the article "The" to the name of the old corporation, and transferred all the property and assets of Hamilton to The Hamilton, later selling the assets and retaining the proceeds. In addition to discussing principles of novation and estoppel, the Court said: "there is ample authority also to support the proposition that the defendant, having taken over the assets of the former company for the purpose of carrying on its business, without apparent change in the personnel of the concern, is liable for the payment of the debts of the former concern. It is held to take the benefits and advantages cum onere * * *" Id., at p. 312. (No New Jersey supporting authority was cited.)
*195 Finally, in Fox v. Radel Leather Mfg. Co., supra, plaintiff was a former stockholder of defendant's predecessor, to which predecessor plaintiff had sold all his capital stock. The predecessor company was dissolved, but later re-incorporated under the exact same name with the same officers, directors and stockholders and the same assets. Defendant admitted it assumed its predecessor's liabilities but the Court implied that even if it hadn't, it would be liable as a matter of law repeating the dicta from the Parsons case, supra, citing Parsons and Chorpenning cases as authority. The Court allowed interest on the plaintiff's judgment.
While the dicta of the Parsons case, repeated in the Fox case, give support to plaintiff's proposition the accuracy of the statements is open to question. For instance, suppose that in Parsons, The Hamilton Ice Co. had paid a full consideration for the transfer to assets from Hamilton Ice Co. and further that Hamilton continued in existence as a holding company. In such a case there would be no need or reason to pursue the new corporation despite the fact that there were common personnel and despite the fact the new corporation continued the business operation of the old.
"It is generally held that if one corporation purchases the assets of another and pays a fair consideration therefor, no liability for the debts of the selling corporation exists in the absence of fraud or agreement to assume the debts * * *. That there is no liability is true even though the purchasing corporation is organized by the stockholders or by the members of the vendor corporation, or by some of them, or by the bondholders of the corporation * * *". 19 Am. Jr.2d § 1546, pp. 922-3.
See, 15 Fletcher, op cit., § 7122, p. 196; see also, Luedecke v. Des Moines Cabinet Co., 140 Iowa 223, 118 N.W. 456, 457, 32 L.R.A., N.S., 616 (Sup. Ct. 1908). Compare however, the situation confronting the Kentucky Court of Appeals in American Railway Express Co. v. Commonwealth, 190 Ky. 636, 228 S.W. 433, 30 A.L.R. 543 (Ct. of App. 1920), appeal dismissed, 263 U.S. 674, 44 S.Ct. 4, 68 L.Ed. 500 (1923) where the transferor was not dissolved and in fact *196 was capable of paying plaintiff's judgment, but the transferor had no assets in Kentucky, and therefore, the transferee was held liable on a trust fund theory.
In other words, the factual conclusion that the transferee corporation is a continuation of the transferor corporation does not inexorably lead to the legal conclusion that the transferee is therefore liable for its transferor's obligations. Many facts and policy factors must be weighed in the balance, most importantly, the policy protecting corporate creditors must be weighed against the equally important policy respecting separate corporate entities.
In reviewing the New Jersey cases discussed above, and abstracting the elements common to all the cases the Court notices that in each case there was (1) transfer of corporate assets (2) for less than adequate consideration (3) to another corporation which continued the business operation of the transferor (4) when both corporations had at least one common officer or director who was in fact instrumental in the transfer (except in the Aetna case where there was, however, actual knowledge of the transferor's financial condition) and (5) the transfer rendered the transferor incapable of paying its creditors' claims because it was dissolved in either fact or law.
In the case at bar Phillips' assets (including the I.C.C. operating authority) were transferred to Diamond T for nominal consideration or none at all as appears from Taylor's statement that Phillips has a checking account with only a few dollars in it, which in any event is located in Philadelphia. The assets were valued in excess of $100,000 judging from the contract of sale between Taylor and Ujay. Furthermore, Taylor as president, director and principal stockholder of both Phillips and Diamond T was instrumental in affecting the transfer; he had actual knowledge of plaintiff's claim and such knowledge must be imputed to Diamond T, and, therefore, Diamond T's good faith could be open to question even if there were some consideration. Diamond T is presently operating some of Phillips' trucks and in fact now *197 conducts its operations out of the same terminal facilities originally leased to Phillips in Jersey City. It is clear that Phillips has insufficient assets to pay plaintiff's claim, but even if it did, it has no intention of paying and furthermore, accordng to Taylor, will be formally dissolved when the present litigation is concluded, and in any event, is presently dissolved in fact, no longer conducting any operations whatsoever.
The record here shows that there is palpably no genuine issue of material fact and plaintiff is clearly entitled to a judgment as a matter of law together with costs and interest from the date the compensation award was entered. This conclusion follows from consideration of the cases hereinbefore cited as well as upon plaintiff's so-called continuation theory as discussed above. It is understood that this individual judgment against Diamond T is not limited to following any of Phillips' assets should execution be necessary, but may be satisfied, as provided by law, from any property in Diamond T's name.
An additional comment seems appropriate regarding plaintiff's failure to join Ujay as a party defendant in the present action. Despite the fact that Ujay is apparently liable to plaintiff under its contract with Taylor, it is by no means certain that plaintiff would obtain satisfactory relief. While Ujay is licensed to do business in New Jersey and is therefore amenable to personal service, plaintiff is not a party to the Taylor-Ujay contract which purports to protect him and Diamond T. The contract in any event is governed by Missouri law which may not provide plaintiff a right on the contract. Further, assuming that plaintiff recovered a judgment on the contract it is not certain that plaintiff could satisfy his judgment without going to St. Louis. These and perhaps other considerations no doubt played a part in plaintiff's decision not to join Ujay.
Furthermore, the conclusion herein accords with the strong public policy protecting creditors. Viewed from another approach this Court believes that what has been actually accomplished *198 here is a combination of a de facto dissolution and merger without any observance of the statutory safeguards prescribed at least in part for the protection of creditors. Even if Diamond T were not subject to our own statutory merger provisions, Phillips as a domestic corporation should not be permitted to evade the obligations it incurred while enjoying New Jersey's favorable corporate climate. See N.J.S.A. 14:12-1 et seq.; R.S. 14:13-1 et seq. Diamond T having absorbed Phillips is liable for Phillips' obligations. Such would be the result in Delaware. See Drug, Inc. v. Hunt, 35 Del. 339, 168 A. 87 (Sup. Ct. 1933). A similar result would probably be reached in Pennsylvania. See, Marks v. Autocar Company, 153 F. Supp. 768 (D.C.E.D. Pa. 1954). Even if Diamond T's domiciliary state's law were to the contrary, New Jersey law might control the ultimate disposition for the protection of its creditors. Dr. Hess & Clark Inc. v. Metalsalts Corp., 119 F. Supp. 427 (D.C.N.J. 1954). The authorities cited supra are also in accord with such a result. See also, Applestein v. United Board & Carton Corp., 60 N.J. Super. 333 (Ch. Div. 1960), affirmed, 33 N.J. 72 (1960).
But this Court is content to rest its decision on the five elements discussed above which clearly indicate that Diamond T is a continuation of Phillips of a kind which entitles plaintiff to his judgment.
Accordingly summary judgment will be entered in plaintiff's favor.