CORPORATIONS — TRANSFER OF ASSETS — LIABILITY TO CREDITORS It is the general rule that a corporation is a distinct legal entity separate and apart from other legal entities. However, if facts surrounding an inter-corporate transfer of corporate assets disclose that the transferor corporation is wholly owned or controlled or dominated by the transferee corporation, so that the transferor has become a mere instrumentality or adjunct or alter ego of the transferee, and the transferor is or becomes thereby incapable of meeting its obligations as they mature, a court may look beyond the form to the substance of the matter, disregard the general rule as to separate and distinct legal identity, and hold the transferee liable to the creditors of the transferor. The Attorney General has had under consideration your recent letter in which you advise us and request our opinion, as follows: "A domestic stock non-insurance corporation, hereinafter called corporation, was incorporated pursuant to the laws of Oklahoma in 1961. In that same year a domestic stock legal reserve life insurance company, hereinafter called Insurer, was reorganized and became a wholly-owned subsidiary of the Corporation. "Subsequently, as a result of a statutory reorganization under the provision of 18 O.S. 1.170a [18-1.170a](B) (1961), the Corporation became the wholly- owned subsidiary of the Insurer, effective November 26, 1969. The two corporations enjoy the same Board of Directors and Officers. The relationship of the two corporations is set forth in a proxy statement filed with the Securities and Exchange Commission of Washington, D.C., and this office in 1969, which reads in part, as follows: "The Corporation was formed in 1961 by the shareholders of Insurer* primarily to assist financing the Insurer through a period of substantial drain on Insurer's capital surplus, by the Corporation using the borrowing power of its equity in the Insurer as a means of supplying Insurer the necessary surplus funds for growth and expansion. This purpose has been generally pursued by the corporation to date. In addition the Corporation has from time to time made acquisitions for the benefit of the Insurer to assist and accommodate Insurer in its growth and expansion. (Emphasis added) Original name omitted. "As a result of various business transactions and insurance company acquisitions, from which the Insurer has benefitted, the Corporation has created considerable long term debt. An examination of the Insurer by this office reveals that substantially all of the income of the Corporation is, and has been, unsecured loans or advances made by the Insurer to the Corporation. The records of the two corporations reflect that the Insurer has made monthly advances to the Corporation in an amount necessary for the Corporation to pay its monthly debt obligation, and management has advised this office that the Corporation would have defaulted if such advances had not been made by the Insurer. The Insurer has made several debt payments direct to the creditors of the Corporation. "Premises considered, your opinion is respectfully requested as follows: "Under what conditions, if any, is a corporation, acquiring assets under the conditions recited above, liable to the creditors of the corporation from whom those assets were acquired?" From other information furnished to us, we learned that the referenced proxy statement also contained the following: "The corporation owns no physical properties because its sole historical purpose has been to invest in stock of insurers and to lend financial assistance by various means to insurer. From time to time it has owned physical properties including real estate and the present home office building of insurer."* Original name omitted. According to a proxy statement delivered to Insurer's stockholders prior to a meeting November 4, 1969, the status of Insurer as Corporation's wholly-owned subsidiary changed, so that on August 1, 1969, Corporation held approximately one-third of the outstanding shares of Insurer. It is not clear, however, that Insurer's control or domination of Corporation has materially changed by reason of such status change. As a result of a reorganization effected on or about November 26, 1969, the roles of Corporation and Insurer were reversed. It is now asserted that Corporation is a subsidiary of Insurer. Other information made available to us reveals that Corporation has from time to time acquired controlling or substantial interests in and to other insurance companies, both domestic and foreign, in exchange for stock of Insurer, or Corporation stock, or promissory notes payable over considerable periods of time at fixed amounts per month, or combinations of the foregoing. Such stock holdings were in most instances promptly transferred by Corporation to Insurer for considerations such as cancellation of claimed indebtednesses of Insurer to Corporation, shares of Insurer, Insurer's surplus certificates, etc. It further appears that Corporation, since its creation by Insurer, has acted as the agent, instrumentality, adjunct or alter ego of the Insurer and has not, to any significant degree, engaged in business of any kind except such as was carried on under the express direction and for the ultimate benefit of the Insurer. It also appears that Corporation is unable to meet its periodic debt servicing requirements, and has no source of income from which to discharge its obligations as they mature. The factual situation outlined in your letter, the matters referred to above, and the information and data submitted by your office, raise a strong presumption that Corporation was created for the specific purpose of assisting and acting for Insurer in the latter's financing. In 15 Fletcher, Cyc., Corporations, sec. 7122, p. 196, the general law applicable to your question is stated, as follows: "Generally where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, except: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts." In Wallace v. Tulsa Yellow Cab Taxi and Baggage Co., et al., 178 Okl. 15, 61 P.2d 645 (1936), in numbered paragraph 1 of its syllabus, the Supreme Court held: "When one corporation is but an instrumentality or adjunct of another by which it is dominated and controlled, a court may look beyond the form to the substance of the situation, and disregard the theory of distinct legal entity for the purpose of holding the dominant corporation responsible for the liabilities of the sham corporation." In Gulf Oil Corporation v. State of Oklahoma and Ferrill H. Rogers, et al., 360 P.2d 933
(1961), the Supreme Court observed, at page 936: "It is the general rule that a corporation is a distinct legal entity separate and apart from other legal entities, but this rule has its limitations. The distinct legal entity may be avoided if it appears from the examination of the entire facts, either (1) that the separate corporate existence is a design or scheme to perpetrate fraud, or (2) that one corporation is so organized and controlled and its affairs so conducted that it is merely an instrumentality or adjunct of another corporation. In other words, it must appear that one corporation is merely a dummy or sham. Wallace v. Tulsa Yellow Cab Taxi and Baggage Co., 178 Okl. 15, 61 P.2d 645; Gibson Products Co. of Tulsa v. Murphy, 186 Okl. 714, 100 P.2d 453, and Mid-Continent Life Ins. Co. v. Goforth, 193 Okl. 314, 315,143 P.2d 154." In Jackson v. Diamond T. Trucking Co.,100 N.J. Super. 186, 241 A.2d 471 (1968), the Superior Court of New Jersey, Law Division, in paragraph No. 2 of its syllabus, stated: "Properties of a corporation constitute a trust fund for payment of its debts, and where there has been a misappropriation of such funds, or the corporation has been divested thereof by consolidation, merger, reorganization, or reincarnation, not only may fund be followed, by aid of equity, for benefit of creditors, but he may recover, in an action at law, against corporation which has taken over such fund with business of his debtor." (Emphasis added) In summation, at page 478, the Court stated: "Furthermore, the conclusion herein accords with the strong public policy protecting creditors. Viewed from another approach this court believes that what has been actually accomplished here is a combination of a de facto dissolution and merger without any observance of the statutory safeguards prescribed at least in part for the protection of creditors. Even if Diamond T were not subject to our own statutory merger provisions, Phillips as a domestic corporation should not be permitted to evade the obligations it incurred while enjoying New Jersey's favorable corporate climate. . . . Such would be the result in Delaware. See Drug, Inc. v. Hart, 35 Del. 339, 168 A. 87
(Superior Court 1933). A similar result would probably be reached in Pennsylvania." To the same effect, see Wolff v. Shreveport Gas Elec. Light Power Co. 138 La. 743,70 So. 789-794 (Sup.Ct. 1916). In Kathryn E. Steuen, Admrx., etc., of George A. Steuen, Deceased, Appt., v. Roscoe Turner Aeronautical Corporation, (7th Cir. 1963),324 F.2d 157, 7 A.L.R.3d 1332, it was recited, in headnote No. 4 that: "4. In determining whether the requisite degree of control is maintained by a parent corporation to render it responsible for the obligations of its subsidiary corporation, relevant factors, the proper combination of which are controlling, are (1) the parent's ownership of all or most of the subsidiary's capital stock, (2) common directors or officers, (3) the parent's financing the subsidiary, (4) the parent's subscribing to all the subsidiary's capital stock or otherwise causing its incorporation, (5) the subsidiary's grossly inadequate capital, (6) the parent's paying the salaries and other expenses or losses of the subsidiary, (7) the subsidiary's lack of substantial business except with the parent, or no assets except those conveyed to it by the parent, (8) the parent's reference, in its papers or in the statements of its officers, to the subsidiary as a department or division of the parent, or to its business or financial responsibility as being the parent's, (9) the parent's using the property of the subsidiary as its own, (10) the failure of the subsidiary's directors or executives to act independently in the subsidiary's interest, but to take orders from the parent in the latter's interest, and (11) the failure to observe the formal legal requirements of the subsidiary." The Court observed in the body of its opinion (7 A.L.R.3d, p. 1339), as follows: "It is well established that, . . . the parent corporation will be responsible for the obligations if its subsidiaries when . . . the subsidiary has become its mere instrumentality. Taylor v. Standard Gas Electric Company, 96 F.2d 693, (10th Cir., 1938), rev. on other grounds, 306 U.S. 307,59 S.Ct. 543, 83 L.Ed. 669." The Court also stated that the factors referred to in paragraph 4 of its headnotes were relevant in determining the degree of control exercised by the parent. Accordingly, it is the opinion of the Attorney General that your question must be answered as follows: The general rule regarding the separate identity of corporations may be disregarded, and a transferee corporation be held legally liable to a transferor corporation's creditors, either under the "Trust Fund Theory" or the "Instrumentality Rule" referred to and discussed in the several cases cited in this opinion, if and when the transferee acquires assets from a transferor wholly-owned or controlled or dominated by the transferee, where the fact situation establishes the existence of a substantial number of the relevant factors referred to in the Steven case, supra. (Carl G. Engling)