JSB INDUSTRIES, INC., Plaintiff,

v.

NEXUS PAYROLL SERVICES, INC.,
Automated Data Processing, Inc. and
Willard Finkle, Defendants.

Civil Action No. 06–10989–NG.

United States District Court,
D. Massachusetts.

Nov. 15, 2006.

George L. Bernstein, Jeffrey R. Mazer, Bernstein & Miller PA, Lynnfield, MA, for Plaintiff.

Jeffrey Lewis Levy, Corrigan & Levy, LLP, Daniel R. Deutsch, Deutsch Williams Brooks Derensis & Holland, P.C., Boston, MA, for Defendants.

## ORDER

NANCY GERTNER, Judge.

Electronic ORDER entered granting 7 Motion to Dismiss, adopting Report and Recommendations re 13 Motion to Dismiss, there being no objection.

### REPORT AND RECOMMENDATION ON MOTION TO DISMISS COMPLAINT AS TO ADP

DEIN, United States Magistrate Judge.

#### I. INTRODUCTION

In this action, the plaintiff JSB Industries, Inc. ("JSB") contends that it was defrauded by its payroll processor, the defendant Nexus Payroll Services, Inc.

("Nexus") and its principal officer, the defendant Willard Finkle ("Finkle"). JSB further contends that the defendant ADP, Inc. (incorrectly named Automated Data Processing, Inc. in the complaint), which took over the payroll function from Nexus, is also liable for this loss. The matter is presently before the court on the motion of ADP, Inc. ("ADP") to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. This court finds that the complaint fails to state a basis for ADP's liability for the co-defendants' alleged wrongful conduct. Therefore, and for the reasons detailed more fully herein, this court recommends to the District Judge to whom this case is assigned that the "Defendant ADP, Inc.'s Motion to Dismiss Complaint as to ADP" (Docket No. 7) be ALLOWED, and that the complaint against ADP be dismissed without prejudice.

## II. *STATEMENT OF FACTS*

When ruling on a motion to dismiss, the court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all reasonable inferences. *See Cooperman v. Individual, Inc.*, 171 F.3d 43, 46 (1st Cir.1999). Applying this standard to the instant case, the relevant facts are as follows.

JSB is a Massachusetts corporation located in Chelsea, Massachusetts. (Compl.¶ 5). Beginning in around October 2000, JSB entered into a services agreement with Nexus whereby Nexus was to provide payroll services to JSB. (*Id.* at ¶ 9). Pursuant to this agreement, JSB provided funds to Nexus for Nexus to pay payroll, payroll taxes and employee contributions, including unemployment contributions, on behalf of JSB. (*Id.* at ¶ 10). This arrangement continued until September 2005. (*Id.*).

In July 2005, Finkle, a principal of Nexus, "introduced ADP to JSB for the purposes of ADP taking over JSB's payroll services." (*Id.* at ¶ 11). As alleged in the complaint "[u]pon information and belief, ADP was introduced to and took over all of Nexus' accounts." (*Id.* at ¶ 12). ADP "commenced providing payroll services for JSB" in October 2005. (*Id.* at ¶ 26).

From about the time of Nexus' introduction of ADP until its services ended, *i.e.* from July through September 2005, it is alleged that "Nexus engaged in a pattern and practice to defraud JSB." (*Id.* at ¶ 13). Specifically, but without limitation, although it collected the funds from JSB, Nexus failed to pay payroll taxes to the United States Internal Revenue Service ("IRS"), and failed to pay unemployment compensation and health insurance contributions to the Massachusetts Division of Unemployment Assistance. (*Id.* at ¶¶ 14–23). The harm caused JSB by this fraud exceeds $100,000.00. (*Id.*).

There are no allegations that ADP participated in this fraudulent activity or had knowledge of it while it was allegedly happening. Nevertheless, JSB contends that ADP is liable for the wrongful conduct of Nexus and Finkle. The relevant allegations are as follows:

- At the time that they were engaging in their fraudulent activity "Nexus and Mr. Finkle knew that ADP would be taking over JSB's account." (*Id.* at ¶ 24).

- By an e-mail dated August 10, 2005, ADP provided JSB with its pricing and identified itself as a "World Class Service." (*Id.* at ¶ 25).

- "ADP knew or should have known that Nexus failed to pay payroll taxes on behalf of JSB to the Internal Revenue Service and failed to pay employment contributions to the Massachusetts Division of Unemployment Assistance,

but failed to disclose this information to JSB." (*Id.* at ¶¶ 27, 48).

- This conduct of ADP "was done knowingly and willfully." (*Id.* at ¶ 49).

- Nexus's counsel has stated that there were "a number of companies who find themselves in a similar situation." (*Id.* at ¶ 29).

According to JSB, ADP's failure to disclose Nexus' failure to make payments constitutes an unfair and deceptive act and practice in violation of Mass. Gen. Laws ch. 93A, §§ 2, 11 (Count II, Compl. at ¶ 48), and constitutes fraud upon JSB (Count III, Compl. at ¶ 52). In addition, JSB contends that ADP is liable under a theory of "Successor Liability" (Count IV). In support of its claim of successor liability, JSB alleges as follows:

- "Upon information and belief, Nexus and Mr. Finkle engaged in the fraudulent conduct with knowledge that ADP would be taking over the account." (Compl. at ¶ 53)

- "Nexus and Mr. Finkle arranged to provide[ ] ADP with Nexus' most valuable asset, Nexus' client list and by accepting the client list, ADP has diverted funds belonging to Nexus' creditors." (*Id.* at ¶ 54).

- "Nexus' transaction with ADP was made in an effort to hinder, delay or defraud Nexus' creditors." (*Id.* at ¶ 55).

- "ADP is liable to JSB for the aforementioned fraudulent conduct." (*Id.* at ¶ 56).

For the reasons detailed below, this court finds that the complaint fails to state a claim against ADP, and that the complaint as to ADP should be dismissed without prejudice.[1]

## III. ANALYSIS

### A. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleadings. Thus, when confronted with a motion to dismiss the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *Cooperman,* 171 F.3d at 46. "Dismissal under Fed.R.Civ.P. 12(b)(6) is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery." *Id.; Conley v. Gibson,* 355 U.S. 41, 45–48, 78 S.Ct. 99, 101–103, 2 L.Ed.2d 80 (1957).

Under Fed.R.Civ.P. 8(a), a plaintiff is required to submit "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). "Plaintiffs only are obliged to set forth in their complaint 'factual allegations either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory.'" *Raytheon Co. v. Continental Cas. Co.,* 123 F.Supp.2d 22, 26–27 (D.Mass. 2000) (quoting *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988)). "The Rules 'do not require a claimant to set out in detail the facts upon which he bases his claims.'" *Id.* at 27 (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993)). "The pleading requirements, though 'minimal,' are not 'non-existent.' Modern notions of 'notice pleading' notwithstanding, a plaintiff ... is nonetheless required to set forth factual allegations, either direct or inferential, *respecting each material element necessary to sustain recovery under some actionable legal theory.*" *Rumford Pharmacy, Inc. v. City of E. Providence,*

---

1. Count I of the complaint purports to state a civil RICO claim under 18 U.S.C. § 1961 against Nexus and Finkle only, and is not at issue in the instant motion.

970 F.2d 996, 998 (1st Cir.1992) (internal citations omitted; emphasis in original).

In connection with JSB's claim of fraud, Fed.R.Civ.P. 9(b) imposes a heightened pleading requirement, and requires that "the circumstances constituting fraud or mistake shall be stated with particularity." "This heightened pleading standard is satisfied by an averment 'of the who, what, where, and when of the allegedly false or fraudulent representation.'" *Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 15 (1st Cir.2004) (citations omitted). Applying these standards to the instant case compels the conclusion that the motion to dismiss should be allowed.

## B. *Fraud*

■■■ The crux of JSB's fraud claim against ADP is that it failed to disclose that Nexus had not paid the taxes as required. This count fails to state a claim because there are no facts from which this court can ascertain that ADP had a duty to disclose this information. Moreover, there are no facts from which the court can even infer that JSB relied on ADP's silence and suffered any harm as a result. Consequently, this court recommends that JSB's claim of fraud (Count III) be dismissed.

The standard for establishing fraud, including fraud by omission, is well established. As the court held in *Sahin v. Sahin*, 435 Mass. 396, 758 N.E.2d 132 (2001):

> In a common-law action for fraud, a plaintiff must prove that "the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied

upon the representation as true and acted upon it to [her] damage." *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 703, 322 N.E.2d 768 (1975), quoting *Barrett Assocs., Inc. v. Aronson*, 346 Mass. 150, 152, 190 N.E.2d 867 (1963). Fraud by omission requires both concealment of material information and a duty requiring disclosure. *See Roadmaster Indus., Inc. v. Columbia Mfg. Co.*, 893 F.Supp. 1162, 1179 (D.Mass.1995).

*Sahin*, 435 Mass. at 402 n. 9, 758 N.E.2d at 138 n. 9.

■■■ Unless there is a duty to disclose, the failure to disclose information is not actionable. *Nota Constr. Corp. v. Keyes Assocs., Inc.*, 45 Mass.App.Ct. 15, 19, 694 N.E.2d 401, 404 (1998) and authorities cited. While a duty to disclose may arise in "a number of circumstances," *id.*, the existence of the duty is dependant on "a fiduciary duty or other similar relation of trust and confidence that required disclosure." *Roadmaster*, 893 F.Supp. at 1179, and authorities cited.[2] *See also Chiarella v. United States*, 445 U.S. 222, 228, 100 S.Ct. 1108, 1114, 63 L.Ed.2d 348 (1980) ("one who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so. And the duty to disclose arises when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.") (internal quotation and punctuation omitted). In the instant case, all that is alleged is that ADP provided payroll services to JSB. This business relationship does not, in and of itself, create a

---

**2.** This case does not involve a situation where ADP is being challenged for failing to make a disclosure which was necessary to prevent a partial disclosure from being misleading. See *Nota*, 45 Mass.App.Ct. at 19, 694 N.E.2d at 404. While under such circumstances a distinct relationship of trust or confidence may not be necessary, that is not the situation here.

fiduciary situation or position of trust requiring disclosure.

The absence of a special relationship renders the instant case materially different from that presented in *Jessie v. Boynton,* 372 Mass. 293, 361 N.E.2d 1267 (1977), on which JSB relies. There a complaint alleging a failure to disclose on the part of corporate directors was found to survive a motion to dismiss. As the court held, a fiduciary duty existed between the directors and the shareholders which required disclosure in the circumstances presented by that case. *Id.* at 304, 361 N.E.2d at 1273. In the instant case, JSB has not presented any facts from which the existence of fiduciary duty may be inferred, as a result of which the complaint should be dismissed.

The complaint is deficient for the equally important reason that it does not show "sufficient aspects of reliance and damage" to state a claim of fraud. *Id.* Thus, there are no facts from which even the inference can be drawn that JSB relied on ADP's silence, or that ADP's after-the-fact silence caused JSB's damages. According to the complaint, ADP did not begin providing payroll services to JSB until after Nexus and Finkle had misappropriated the funds provided by JSB. There are no allegations that ADP knew or should have known about the misappropriations before it began providing payroll services. And there are no allegations from which it could be inferred that if ADP had revealed the information to JSB, the plaintiff could, somehow, have recovered its funds. For all these reasons, this court recommends that JSB's claim of fraud against ADP be dismissed.

### C. *Unfair and Deceptive Acts and Practices*

■ ADP challenges the sufficiency of JSB's claim under Mass. Gen. Laws ch.

93A on the grounds that JSB has not alleged that the wrongful conduct "occurred primarily and substantially within the Commonwealth" as required by Mass. Gen. Laws ch. 93A, § 11 and because the complaint fails to allege facts giving rise to a 93A violation. JSB argues strenuously that there are sufficient facts to establish that the conduct complained of occurred within the Commonwealth, and contends that the same conduct which states a claim for fraud states a claim under Mass. Gen. Laws ch. 93A for unfair and deceptive acts and practices. This court concludes that there is no reason to review the sufficiency of the pleading as to the locale of the wrongful conduct since the allegations of the complaint do not assert sufficiently egregious conduct so as to state an actionable claim under 93A.

■ It is clear that a complaint which states a claim for deceit or fraudulent misrepresentation also states a claim under Mass. Gen. Laws ch. 93A. See *Nota,* 45 Mass.App.Ct. at 21, 694 N.E.2d at 406 ("Where we hold that at least two of the representations ... set forth potentially viable claims for deceit and negligent misrepresentations, [plaintiff's] c. 93A claim based on those representations remains viable"); *Back Bay Farm, LLC v. Collucio,* 230 F.Supp.2d 176, 178–79 (D.Mass. 2002) (where complaint details specific statements which plaintiff contends constitutes the use of false and deceitful tactics in fraudulently selling a horse, complaint states a claim under 93A). In the instant case, however, the complaint fails to state a claim for fraud or fraudulent omission. Even a most generous reading of the complaint establishes that it "does not set forth allegations rising to the level of a 93A violation," as a result of which the complaint should be dismissed. *Daley v. Twin Disc, Inc.,* 440 F.Supp.2d 48, 53 (D.Mass.2006).

■ "Chapter 93A encompasses only misconduct that rises to a 'level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce.'" *Id.* (citing *Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc.*, 884 F.2d 1510, 1513 (1st Cir.1989)). Here, there are no allegations that ADP participated in the misappropriation of JSB's funds, or that it had knowledge of the events as they were occurring. There are no allegations that ADP's silence was relied on by JSB or was the cause of JSB's loss of significant funds. The allegations of the complaint do not give "rise to an inference of 'unethical, immoral, oppressive, or unscrupulous' behavior[.]" *Id.* (quoting *Kobayashi v. Orion Ventures, Inc.*, 42 Mass.App.Ct. 492, 505, 678 N.E.2d 180 (1997)). Therefore, this court recommends that Count II of the complaint, alleging a violation of Mass. Gen. Laws ch. 93A, be dismissed as to ADP.

### D. *Successor Liability*

■ In Count IV, JSB contends that ADP is liable under a theory of successor liability. The basis for this claim is that Nexus and Finkle allegedly provided ADP with "Nexus' most valuable asset, Nexus' client list and by accepting the client list, ADP has diverted funds belonging to Nexus' creditors." (Compl.¶ 54). Moreover, "Nexus' transaction with ADP was made in an effort to hinder, delay or defraud Nexus' creditors." (*Id.* at ¶ 55, 678 N.E.2d 180). This court recommends that this count be dismissed as well, since it fails to state a claim for successor liability.

Most jurisdictions, including Massachusetts, follow the traditional corporate law principle that the liabilities of a selling predecessor corporation are not imposed upon the successor corporation which purchases its assets, unless (1) the successor expressly or impliedly assumes liability of the predecessor, (2) the transaction is a de facto merger or consolidation, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor.

*Guzman v. MRM/Elgin,* 409 Mass. 563, 566, 567 N.E.2d 929, 931 (1991). As detailed below, only the fourth exception has any possible application to the instant case, and the pleadings are insufficient with respect to that exception as well as the others.

JSB has not alleged that ADP acquired all or substantially all of Nexus' assets, so it is not clear that a successor liability analysis is even applicable. Nevertheless, assuming, arguendo, that JSB has alleged that ADP acquired all of Nexus' assets, the complaint still fails to state a claim.

■ There are no allegations that ADP either expressly or impliedly assumed the liability of Nexus. All that is alleged is that ADP began providing payroll services after Nexus stopped. Thus, the first exception is not applicable. There also are no allegations to the effect that there was a de facto merger or consolidation of the two companies. In determining whether there is a merger, courts consider various factors such as whether there is "continuity of management, personnel, physical location, assets, and general business operations," or a continuity of shareholders, whether "the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible," and whether the buyer corporation "assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation." *In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution,* 712 F.Supp. 1010, 1015 (D.Mass.1989). *See also Dayton v. Peck, Stow & Wilcox*

*Co.*, 739 F.2d 690, 693 (1st Cir.1984). In the instant case, the most liberal reading of the complaint establishes that ADP was a separate company—a competitor of Nexus—which began providing payroll services when Nexus stopped doing so. ADP even sent its own company information to JSB, including its own pricing information. (Compl.¶ 25). Therefore, the allegations of the complaint do not support a finding that there was a de facto merger or consolidation of ADP and Nexus.

The allegations of the complaint also do not support a finding that ADP is a mere continuation of the business of Nexus. In determining whether there is such a continuation courts look to various factors, including whether the successor company retained the same employees, facilities, and name, and whether the successor company continued the predecessor company's business, and held itself out as doing so. *See Blackstone Valley Elec. Co. v. Stone & Webster, Inc.*, 867 F.Supp. 73, 76–77 (D.Mass.1994). There is no indication of any such continuation of business in the instant case.

> The fourth exception to the traditional rule of nonliability arises where a transaction is entered into fraudulently to evade liability for debts. For example, the fraud exception has been used to impose liability on a buyer where the consideration given for the assets was fictitious or inadequate. This exception essentially amounts to an application of the general rule against fraudulent conveyances and was created to prevent entities from changing their corporate form to escape liability.

George W. Tetler, III, *Buying and Selling a Privately Owned Business in Massachusetts*, § 7.6.2(e) (MCLE, Inc.2005). It appears that JSB is attempting to state a claim under this theory of fraud. However, the complaint is completely devoid of

any supporting factual allegations. For example, there are no allegations to the effect that any price ADP may have paid for the customer list was unreasonable. *See Araserv, Inc. v. Bay State Harness Horse Racing and Breeding Ass'n Inc.*, 437 F.Supp. 1083, 1090–91 (D.Mass.1977) (absent allegation that purchaser of substantially all of the assets of seller corporation paid an unreasonable purchase price, plaintiff fails to establish a likelihood of success on the merits); *Frank Ix & Sons, Inc. v. Phillipp Textiles, Inc.*, No. 95–C3195, 1998 WL 709463, at *5, 165 F.3d 32 (7th Cir.1998) (unpub. op. relied on by JSB) (where assets transferred for less than fair value, successor liability may be imposed on "fraudulent purpose" grounds). Nor, as detailed above, are there any allegations that the "sale" of the customer list was an effort by Nexus to "change its corporate form to escape liability." *See Jackson v. Diamond T. Trucking Co.*, 100 N.J.Super. 186, 196, 241 A.2d 471, 477 (1968) (relied on by JSB) (in cases finding successor liability "there was (1) transfer of corporate assets (2) for less than adequate consideration (3) to another corporation which continued the business operation of the transferor (4) when both corporations had at least one common officer or director who was in fact instrumental in the transfer … and (5) the transfer rendered the transferor incapable of paying its creditors' claims because it was dissolved in either fact or law."); *Eagle Pac. Ins. Co. v. Christensen Motor Yacht Corp.*, 85 Wash.App. 695, 707, 934 P.2d 715, 721 (1997) (relied on by JSB) (if successor liability is being imposed because "the transfer of assets is for the fraudulent purpose of escaping liability" there must be "(1) a showing of fraud or actions otherwise lacking good faith, (2) insufficient consideration for the assets, and (3) predecessor left unable to respond to creditor's claims."). The allegations of the complaint

are simply insufficient to support a theory of successor liability based on fraud.[3]

Finally, JSB has cited to the case of *Joseph P. Manning Co. v. Shinopoulos,* 317 Mass. 97, 56 N.E.2d 869 (1944), where the court granted equitable relief after it found that one brother had transferred assets to the other for the purpose of defrauding creditors. The court held that both under the fraudulent conveyance statute, Mass. Gen. Laws. ch. 109A, § 7, and common law, "if the conveyance is made *and received* for the purpose of hindering, delaying or defrauding creditors it is fraudulent and can be set aside without regard to the nature or amount of consideration." *Id.* at 99, 56 N.E.2d at 870 (emphasis added). Assuming that the complaint purports to state a claim that the customer list was fraudulently conveyed to ADP, the claim must still be dismissed as there are no allegations to the effect that ADP participated in the fraud in any way or "received" the list for fraudulent purposes.

## IV. *CONCLUSION*

For all the reasons detailed herein, this court recommends to the District Judge to

whom this case is assigned that the "Defendant ADP, Inc.'s Motion to Dismiss Complaint as to ADP" (Docket No. 7) be ALLOWED, and that the complaint against ADP be dismissed without prejudice.[4]

October 23, 2006.

---

3. The unpublished decision of *Infra–Metals Co. v. Topper & Griggs Group, Inc.,* No. Civ. A. 3:05–CV559, 2005 WL 3211385, at *1 (D.Conn. Nov.30, 2005), relied on by JSB not only relies on the same standard as the above-cited cases, but also notes that to the extent that successor liability is based on a fraud theory, it must be pleaded with the specificity required by Fed.R.Civ.P. 9(b). *Id.* at n. 4.

4. The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are

further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir.1998).