WILLIAM W. DOWNS *vs.* BOWDOIN SQUARE BAPTIST
SOCIETY.

Suffolk. January 17, 1889. — May 9, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Exceptions — Incorporated Proprietors of Meeting-house — Meetings —
Notice in Warrant — Settlement of Minister.*

A finding at a trial in accordance with an excepting party's contention will be
taken to be correct as against him on his exceptions.

Proprietors of a meeting-house incorporated under the St. of 1840, c. 62, who
own a meeting-house erected prior to the passage of the St. of 1845, c. 213, (Pub.
Sts. c. 38, § 38,) have no power, unless in pursuance of the provisions of the
Pub. Sts. c. 38, §§ 39–41, to settle a minister.

If such a corporation, by virtue of owning real or personal estate in addition to its
meeting-house, may, under the Pub. Sts. c. 38, § 38, make a contract of settle-
ment with a minister, action had at a meeting with reference thereto is inop-
erative, unless there is an article in the warrant relating to the subject; and an
article " to transact any other business that may legally come before said meet-
ing " is not sufficient.

In an action by a minister against such a corporation to recover for his services, it
was *held* that the judge, who tried the case without a jury, was warranted in
finding that the defendant did not employ the plaintiff, or make any contract
with him, express or implied, for his services.

HOLMES, J. This is an action to recover for services alleged
to have been rendered to the defendant by the plaintiff as its
minister between April 1, 1885, and February 1, 1886. The
case was tried without a jury. The court found for the defend-
ant, and found specially that the plaintiff was not at any time
employed by the defendant, under any contract, express or im-
plied, and also that during the time covered by the declaration
the plaintiff did not perform any service for the defendant, at
its request or with its consent, express or implied. Many rulings
were asked on both sides, but the only question now before us
is whether we can say, as matter of law, that both the foregoing
findings were wrong, in view of the uncontroverted evidence.

At the time when the plaintiff first began to preach in the
defendant's meeting-house, there were some thirty members of
the defendant's society, but all but seven had ceased to attend
its business meetings, or to worship in the meeting-house, the

pews were all permitted to be used as free pews, and the church was conducted as a free church. The financial affairs of the church were managed upon a voluntary system, as the plaintiff knew, collections being taken up every Sunday morning, and envelopes being furnished in advance for that purpose to sub-scribers. These weekly payments were handed by the officers of the church to the treasurer of the defendant society. The salary of the plaintiff, and other expenses, were paid by the treasurer, under the direction of a joint committee of the church and society, out of a fund made up of these payments and the rentals of two stores in the meeting-house. The society raised no money by taxes, and had no income except these rentals.

In this state of things, on May 25, 1880, the church elected the plaintiff as its pastor, and communicated its vote to the joint committee. By the by-laws of the society, " every election of a minister for said society shall first be made by the members of the church, and their choice shall be submitted immediately to the society for its confirmation or rejection ; and, in case of confirmation of such choice, the society shall proceed to fix the annual salary of the minister." See *Leicester* v. *Fitchburg*, 7 Allen, 90, 93. No vote of confirmation in express terms was ever passed. The joint committee's records of May 25, 1880, disclose the following : " Mr. Coleman presented a communication from the church, stating that they had extended a call to Mr. W. W. Downs to become their pastor, and desired the committee to appropriate a sum for the salary of the pastor elect. Voted, that the sum of twenty-five hundred dollars be appropriated for salary of the pastor elect, for one year from the commencement of his pastorate, with the usual vacation of four Sabbaths." The plaintiff was notified, and began his services at once. On April 11, 1881, nearly a year later, at a meeting which the court as-sumed to be a legal meeting of the society, but the call of which did not mention the confirmation of a minister as one of its ob-jects, these members being present, it was voted, " that the acts of the joint standing committee for the past year be approved." There were other similar appropriations and approvals, down to June 1, 1884, equally without special previous notification. There was no vote of appropriations for the years beginning June 1, 1884, and June 1, 1885. A salary was paid, however,

to March 1, 1885, with the sanction of the joint committee. Before February 1, 1885, every remaining member of the society, and a considerable number of the members of the church, ceased to attend worship in the meeting-house, as the plaintiff knew. The remaining members of the church and the plaintiff took steps to raise more money by collection. The money collected was not paid over to the treasurer of the society after March 1, 1885, but was disbursed by the treasurer of the church, and, on the other hand, the treasurer of the society withheld the rentals. On May 4, 1885, at a meeting which the court assumed to be a meeting of the society, it was voted that until further action the church be authorized to occupy the real estate of the society not let for commercial purposes, and the net rentals, after paying certain expenses, be paid to the treasurer of the church, " the society not to be responsible for any expense whatever, except as above specified." This was assented to by the plaintiff, and the plan had been approved by him some time before. On October 28, 1885, at a meeting assumed to be a meeting of the society, a vote of the church was approved, requesting the plaintiff to resign. And at an adjournment of the same meeting, on November 19, 1885, it was voted that the plaintiff be dismissed " from the office of minister of the society, and from the employ of the society."

The defendant corporation was formed in 1841. It is found that it is a corporation of proprietors of a meeting-house, that is to say, that it was incorporated under the St. of 1840, c. 62, (Gen. Sts. c. 30, §§ 27–29; Pub. Sts. c. 38, §§ 27–41,) and of course has only the powers of such corporations. This finding was in accordance with the plaintiff's contention, and, although he now founds his whole argument upon a different ground, we should assume that it was correct as against him on his bill of exceptions, even if we saw reason to doubt it in fact. *Howard* v. *Hayward*, 10 Met. 408, 420. *Dennis* v. *Maxfield*, 10 Allen, 138. *Commonwealth* v. *Locke*, 114 Mass. 288. *Copp* v. *Williams*, 135 Mass. 401.

The powers of the defendant, under the St. of 1840, c. 62, were defined by reference to that part of the Rev. Sts. c. 20, which relates to proprietors of churches, meeting-houses, and other houses of public worship, that is, §§ 31–36. These sections

authorize the proprietors to raise money by taxing the pews in order to alter, enlarge, repair, rebuild, or remove their house, but not for the purpose of supporting a minister. Gen. Sts. c. 30, § 27 *et seq.;* Pub. Sts. c. 38, §§ 27–41. The proprietors referred to in the Revised Statutes are unincorporated proprietors, who first were given these powers of raising money for purposes of alteration, etc., by the St. of 1817, c. 189, somewhat analogous to the power of proprietors of lands held in common. Of course these proprietors had no power to raise money by taxing their members; and they had no power to raise it by taxing pews for any purpose, except those for which it was given them by statute. And when a corporation was given simply the powers which the proprietors formerly had, it could no more tax its members for the support of a minister than they could have done, and by the same reasoning it could not contract to employ him.

It is true that § 3 authorizes such corporations to hold real and personal estate in addition to their meeting-house, and provides that the annual income of all their real and personal estate shall be applied to parochial purposes, among which is the support of public worship. *Parker* v. *May,* 5 Cush. 336, 347. But even if this section, the latter part of which is primarily restrictive, would authorize payment of the income as it accrued in aid of the support of a minister, as was done by the defendant, it cannot be that the corporation would be authorized to contract for his employment, when, as we have shown, it had not the means given it to perform its contract, because it was not allowed to tax its members for that purpose, as parishes and religious societies were. Rev. Sts. c. 20, §§ 18, 30. The powers defined in § 1 of the act of 1840 are not enlarged by § 3. The matters in respect of which corporations formed under that act had power to contract, were not greater or less according to the accident of their having a greater or less income. Moreover, the defendant does not appear to have had an income sufficient to warrant the contract alleged to have been made.

Indeed, the plaintiff admits that corporations of this kind had no power to assess pews for the support of a minister until the St. of 1845, c. 213, (Gen. Sts. c. 30, § 39 ; Pub. Sts. c. 38, § 38,) gave the power to "any corporation for religious purposes, . . . in any meeting-house which they may hereafter erect." This

provision did not apply to the defendant, as its meeting-house had been erected before. Afterwards, corporations which had erected their meeting-houses before the act of 1845 were authorized to avail themselves of the provisions of that act on certain conditions. St. 1852, c. 319. St. 1854, c. 258. Gen. Sts. c. 30, §§ 40–42. Pub. Sts. c. 38, §§ 39–41. But the defendant never complied with these conditions. It follows, that, if the defendant attempted to make a contract with the plaintiff, it did not bind itself.

If the corporation had had power to make the alleged contract, it did not do so, because there was no article in the notification of any of the meetings indicating that the question of the confirmation of a minister, or any matter importing confirmation, was to be acted on. Whatever the nature of the corporation, it was plainly necessary that the objects of the proposed meeting should be stated. Pub. Sts. c. 38, §§ 12, 18, 25, 30, 32. Gen. Sts. c. 30, §§ 5, 13, 20, 30, 31. The fourth by-law of the corporation, relied on by the plaintiff, expressly required it, and it was peculiarly necessary in a case like the present, where the great majority of the members of the corporation were not in the habit of attending the meetings, did not attend the meetings in question, and presumably thought that they were incurring no risk by allowing the use and revenues of their meeting-house to be handed over to the church. If notice was necessary, a measure of such importance could not fairly be embraced in the phrase " to transact any other business that may legally come before said meeting." *People's Ins. Co.* v. *Westcott,* 14 Gray, 440, 442. *Gray* v. *Christian Society,* 137 Mass. 329. *American Tube Works* v. *Boston Machine Co.* 139 Mass. 5.

In *Leicester* v. *Fitchburg, ubi supra,* it appeared that there were valid votes of the society which recognized Mr. Lovell as the minister. In the case at bar there were no valid votes, because there was no article notifying the members that the subject was to be dealt with.

Finally, bearing in mind the general state of affairs at the time of the plaintiff's election by the church, as we have set it forth and as it was known to the plaintiff, the kind of corporation that this was found to be, in accordance with the plaintiff's request, and the whole course of dealing afterwards, we cannot

say that the court was not warranted in finding that the plaintiff and defendant, if they had any understanding together, did not understand that the defendant was contracting with the plaintiff, but only understood that the defendant had practically turned over its meeting-house to the church as licensees, and was content that the pastor whom the church elected should preach and take up collections there, and that the church should receive the rentals and the sums collected, applying them to the minister's salary up to the sum named for the year until the defendant should determine otherwise.

Undoubtedly there are indications in the defendant's records that its members did not always keep the difference between a religious society or parish and the incorporated proprietors of a meeting-house distinctly before their minds. But when the plaintiff was employed, the corporation had dropped into the subordinate and auxiliary position contemplated by the St. of 1840, c. 62, and illustrated by some of the cases in the books. *Silsby* v. *Barlow*, 16 Gray, 329. *Howard* v. *Hayward*, 10 Met. 408. *North Bridgewater Congregational Society* v. *Waring*, 24 Pick. 304, 308.

The plaintiff was elected by the church to be their pastor, and was so notified, and served for nearly a year before there was any pretence that the defendant had confirmed the choice. It might well have been found that the plaintiff looked to the church alone, and agreed with the church alone, whatever the legal infirmities of an agreement with such a voluntary organization might be.

Whether there was evidence that, if there ever had been a contract, it was rescinded before the time covered by the declaration, which the court seems to have found as an independent proposition, we need not consider.

*Exceptions overruled.*

*B. F. Butler & E. M. Johnson*, for the plaintiff.
*H. W. Chaplin*, for the defendant.