PAULA JESSIE & others[1] *vs.* FREEMAN BOYNTON & others.[2]

Plymouth. November 5, 1976. — April 4, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Rules of Civil Procedure. Pleading, Civil,* Complaint, Amendment, Fraud. *Corporation,* Charitable corporation, By-law, Membership.

Neither statutory nor case law in this Commonwealth required notice of the substance of proposed by-law changes of a corporation established under G. L. c. 180 prior to action upon such changes where the corporation's by-laws did not require such notice. [298-300]

A notice of a corporate meeting called for the purpose of voting on proposed changes in the corporate by-laws, which advised each member that he could request a copy of the proposed by-laws, did not operate to restrict the meeting to consideration of the draft of the by-laws available at the time the notice of the meeting was sent. [300-301]

---

[1] The plaintiff Jessie and the plaintiffs Ruth Schilling, Doris P. Richmond, and Richard Sommi are employees of the defendant Jordan Hospital Corporation. The plaintiff Stanley MacLeod is described in the complaint as "an employee-family member" of the hospital. The action was brought on behalf of the individual plaintiffs and on behalf of "all other employee and employee-family members" of the hospital. It appears that no action has been taken on any aspect of this suit as a class action.

[2] The defendants are alleged to be the president, the vice-president, the treasurer, and two directors of the Jordan Hospital Corporation "in their representative capacities and on behalf of all other directors" of the hospital; the secretary of the hospital in her representative capacity; and the Jordan Hospital Corporation.

Employee members of a corporation established under G. L. c. 180 were not entitled to vote as a class on a proposed amendment to the corporate by-laws disenfranchising them as members. [301-302]

A complaint alleging that the plaintiffs were induced to vote in favor of proposed amendments to by-laws disenfranchising the employee members of a corporation because they relied on the accuracy of the proposed by-laws received by mail and on certain statements of the defendant officers and directors of the corporation was sufficient to state a claim that the defendants breached their fiduciary duty to the plaintiffs and to state circumstances constituting fraud with sufficient particularity. [302-305]

CIVIL ACTION commenced in the Superior Court on November 12, 1974.

The case was heard by *Adams,* J., on a motion to dismiss; a motion to amend the complaint was heard by *Lappin,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Lee Berger (John Gresham* with him) for the plaintiffs.
*Philip M. Cronin* for the defendants.

WILKINS, J.   On September 9, 1974, the members of the defendant Jordan Hospital Corporation (hospital) purported to adopt new corporate by-laws which provided, for the first time, that employees of the hospital, their spouses, and children constitute a separate class of members ineligible to vote. The plaintiffs brought this proceeding to challenge the propriety of the purported by-law change. We conclude that the members lawfully could vote on the proposed by-laws at the September 9 meeting but that the plaintiffs have alleged sufficient facts to state a claim that the practices followed by the defendants in obtaining that vote may have been contrary to the requirements of law.

In order to assess the issues, the procedural developments in the Superior Court must be set forth first. The defendants filed a motion to dismiss the action pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). A judge of the Superior Court allowed the defendants' motion to dismiss, concluding that the complaint failed to

state a claim on which relief could be granted and that the circumstances constituting fraud were not alleged with particularity as required by Mass. R. Civ. P. 9 (b), 365 Mass. 751 (1974). The judge gave the plaintiffs twenty days to move to amend the complaint. A motion to amend the complaint was filed seasonably, but that motion was denied by another judge of the Superior Court. A judgment of dismissal then was entered from which the plaintiffs have claimed an appeal. We transferred the appeal here on our own motion.

The allowance or denial of the motion to amend was within the discretion of the judge in the circumstances. See *Castellucci* v. *United States Fidelity & Guar. Co., ante* 288, decided today. Under Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974), after the entry of an order of dismissal, a plaintiff is not entitled to amend his complaint as a matter of course. However, rule 15 (a) provides that leave to amend "shall be freely given when justice so requires." We said in *Castellucci* v. *United States Fidelity & Guar. Co., supra* at 289, that the record must show some reason for the denial of a motion to amend a pleading. In this case no apparent or declared reason for the denial of the motion to amend appears except the contention that the complaint, as proposed to be amended, fails to state a valid claim. The defendants make no assertion that the second judge acted in his discretion in denying the motion to amend, and they argue the case solely on the theory that the complaint, as proposed to be amended, fails to state a proper claim.

We accept the premise of the defendants' argument that a judge properly may deny a motion to amend because the complaint as amended would fail to state a claim on which relief could be granted.[3] Consequently, we analyze the

---

[3] There is some authority for the proposition that consideration of the legal sufficiency of an amendment is not an appropriate test in such a situation. See discussions in 6 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1487, at 432-433 (1971), and 3 Moore's Federal Practice, par. 15.08 [4], at 902, 904-905 (2d ed. 1974, & Supp. 1976-1977).

issues argued on behalf of the plaintiffs on the basis of the allegations of the complaint, as proposed to be amended, to determine whether the plaintiffs have alleged a claim which may entitle them to relief.

The complaint, as proposed to be amended, alleges the following facts. The hospital was established under Pub. Stat. c. 115, the predecessor of G. L. c. 180. On or before July 11, 1974, the plaintiffs Schilling and Sommi paid one dollar and became members of the hospital as provided in the hospital's by-laws. On or about July 11, 1974, the secretary of the corporation sent a notice of a special meeting of members to be held on September 9, 1974, which stated that the meeting was called "for the purpose of reviewing and voting upon proposed changes to the Hospital Corporation Bylaws." The notice of the meeting advised each corporate member that, by an enclosed card, he could "request a copy of the Proposed Bylaws, if . . . [he] desire[d] a copy prior to the September 9th meeting." Any one who had any questions was advised to call the hospital's administration office. Schilling and Sommi requested and received a copy "of what they assumed were the proposed bylaws." Certain other persons, including the other named plaintiffs, became members of the corporation late in July, 1974, and did not receive notice of the meeting. The by-laws permitted a member to vote at a meeting after he had been a member of sixty days. These new members were not advised that their right to vote might be taken away by action at the September 9 meeting, and they did not attend the meeting. Other members who received the notice and subsequently received a copy of the proposed by-laws "believed the express or implied promise (contained in . . . [the call of the meeting]) that the by-laws they received in the mail were the bylaws to be voted on at the September 9th meeting . . . ," and they did not attend the meeting. Schilling and Sommi, however, did attend the September 9 meeting with the intention of objecting to a provision in the by-laws, as distributed, which limited nominations to those candidates nominated by a nominating committee.

Jessie *v.* Boynton.

At the meeting Sommi was handed copies of a document entitled "BYLAWS (of March 4, 1968, as amended to and including September 9, 1974) ...." Many of the provisions in the copy distributed at the meeting were substantially different from the provisions of the by-laws distributed in response to requests invited in the call of the meeting.[4] Schilling assumed that the copy of the by-laws being distributed was the same as the copy she received by mail and did not obtain a copy of the by-laws distributed at the meeting. The president of the hospital presided at the meeting and allowed "less than ten (10) minutes to read and study the new proposed 'BYLAWS.'" A question was asked "as to what the substantial changes were," and either the president or the chairman of the by-law committee "stated that they were too numerous and would take too much time to explain, but that two changes were: (1) increasing the Board of Directors to thirty-three to include one employee member and, (2) allowing nominations from the floor." No mention was made of the change which would establish employees of the hospital, their spouses, and children who were corporate members as a "separate class designated as hospital members ... (who would) have the same rights as regular members, *except that hospital members shall be ineligible to vote*" (emphasis in complaint). Schilling and Sommi heard that nominations from the floor would be allowed "and relying on the defendants' silence about any other substantial changes ... believed that their sole objection to the proposed bylaw changes had been obviated." Relying on the defendants' statements, including their silence, concerning substantial changes, Sommi and Schilling voted in favor of the by-law amendment, which was passed unanimously. No separate vote was held by the so called hospital members who, for greater clarity, we shall describe in this opinion as the employee members.

[4] The complaint, as proposed to be amended, does not incorporate the old by-laws, the draft available by mail, or the by-laws distributed at the meeting.

The plaintiffs subsequently learned that the by-law changes created a special membership class of employee members, and objected to the corporate action, demanding that the by-laws adopted at the September 9 meeting be declared null and void. No relief was extended to the plaintiffs, who then commenced this action, alleging that the defendants acted fraudulently, in violation of their fiduciary obligations to the plaintiffs, and illegally. They sought a declaration that the by-laws purportedly adopted on September 9, 1974, were null and void with respect to the disenfranchisement of the employee members. They additionally sought injunctive relief to protect their voting rights. Thereafter the procedural events described earlier in this opinion occurred, and the plaintiffs' appeal has been transferred here.

The plaintiffs raise two objections to the action of the September 9 meeting based on claims that the members had no lawful right to consider the challenged by-law amendment. They object further that an affirmative vote of employee members as a class was necessary to adopt corporate by-laws disenfranchising employee members. They argue finally that, even if the challenged amendment properly could have been considered by a collective membership vote at the September meeting, the conduct of the defendants was such that the vote of disenfranchisement must be invalidated. The plaintiffs do not argue that under no circumstances may they be disenfranchised by a by-law amendment. A voting member of a charitable corporation, having no ownership interest in that corporation, "is not deprived of any vested interest when he is deprived of his right to vote." *Langrock* v. *Porter Hosp. Inc.*, 126 Vt. 233, 236 (1967). The plaintiffs do not challenge this principle but rest their case on the particular circumstances under which their purported disenfranchisement took place. We shall consider each of the plaintiffs' contentions in order.

1. The plaintiffs argue first that the notice of the meeting was fatally defective because it failed to warn the

plaintiffs explicitly that their right to vote might be lost by an amendment to the by-laws at the September 9 meeting.

A c. 180 corporation may provide in its by-laws for the manner of calling its meetings, provided that its chosen method is consistent with law. G. L. c. 180, § 6A. Members of a c. 180 corporation have the power to amend the corporate by-laws. See G. L. c. 180, § 6A, incorporating by reference G. L. c. 156B, § 17. The hospital by-law provision applicable to any amendments to be made at the September 9 meeting stated that the by-laws may be amended "at any meeting called for the purpose." The by-laws thus did not require notice of the substance of any changes to be proposed at any meeting called to amend the by-laws. They only required notice that amendments to the by-laws might be proposed, and that general notice was given, as the plaintiffs concede. The plaintiffs also concede that there was no statutory requirement of notice of the substance of by-law changes which might be proposed, but they contend that the case law of this Commonwealth requires notice of the substance of proposed by-law changes before they may be acted on properly at any meeting of the hospital's corporate members.

There is no established principle that a c. 180 corporation's by-laws may be amended only as to subjects referred to specifically in the call of a meeting, and we see no reason to impose such a limitation where the corporation's by-laws do not so require. The authorities relied on by the plaintiffs do not support their position. In *People's Mut. Ins. Co.* v. *Westcott,* 14 Gray 440 (1860), involving a mutual fire insurance company, we held that additional directors could not be elected lawfully at a special meeting of the company where, unlike the situation before us, the notice of the meeting made no reference to the proposed action (i.e., the election of additional directors). The fact that the notice advised in part that the meeting was called " 'for the transaction of such business as may come before ... [the members]' " was not fair warning of the possibil-

ity of the election of additional directors. *Id.* at 442. Cf.
*Downs* v. *Bowdoin Square Baptist Soc'y*, 149 Mass. 135,
139 (1889). Notice of a stockholders' meeting of a manu-
facturing corporation to consider whether an issue of pre-
ferred stock would be authorized has been held inadequate
to authorize a vote at that meeting to issue stock of a dif-
ferent character. *American Tube Works* v. *Boston Mach.
Co.*, 139 Mass. 5, 9-10 (1885). We have held by-law
changes invalid which were made at a purported special
meeting of stockholders of a business corporation which
was called, not as provided in the corporation's by-laws,
but as the result of action taken at an annual stockhold-
ers' meeting, notice of which meeting made no reference
to the possibility of a special meeting. *Bushway Ice Cream
Co.* v. *Fred H. Bean Co.*, 284 Mass. 239, 243-245 (1933).
Assuming that a c. 180 corporation is subject to the same
requirements as those expressed in these cited cases, the
fact remains that the notice of the September 9 meeting
gave fair warning that amendment to the entire by-laws
of the hospital was subject to consideration at that meet-
ing. If the members did not wish to have such a wide rang-
ing option available at a meeting of members, they could
have set forth some limitation in the hospital's by-laws.
They did not do so; the Legislature has not imposed such
a requirement; and we see no reason why we should.

2. The plaintiffs argue next that the notice of the meet-
ing was so phrased as to permit the meeting to consider
only those proposed by-laws which were referred to in the
notice of the meeting as available on request. Neither the
existing by-laws nor any statute required that the precise
form of any by-law change be established prior to the meet-
ing. The meeting was "called for the purpose of reviewing
and voting upon proposed changes to the Hospital Cor-
poration Bylaws." The notice also advised each member
that by return card he could request "a copy of the Pro-
posed Bylaws . . . ." The notice did not state that the by-
laws then available were to be voted on as then prepared.
The available copy of the by-laws was described as pro-

posed, and the procedure of making copies available to members reasonably implied that a member might review a copy of the proposed by-laws and propose changes at the meeting. Indeed, two plaintiffs strongly favored one substantive change made at the meeting. The meeting was not restricted solely to consideration of the draft of the by-laws available at the time the notice of the meeting was sent.

3. The plaintiffs argue next that the employee members were entitled to vote as a class on any proposed amendment disenfranchising them as members. In *Espinola* v. *Club Liberdade, Inc.*, 327 Mass. 24, 26 (1951), we said: "We are aware of no principle of law which prohibits members of an incorporated social club from altering the requirements for membership provided such alteration when effected by amendment to the by-laws is not contrary to public policy ... or inconsistent with principles of natural justice ... " (citations omitted). The plaintiffs concede that the class voting provisions of § 71 of G. L. c. 156B, the business corporation law, do not apply to a c. 180 corporation. See G. L. c. 180, §§ 3, 10A. Section 71, as appearing in St. 1965, c. 685, § 28, calls for a separate class vote when any proposed amendment to a business corporation's articles of organization "would adversely affect the rights of any class of stock." But G. L. c. 180, § 10A, which lists sections of G. L. c. 156B which are incorporated by reference into G. L. c. 180, does not refer to § 71. The absence of any incorporation by reference of § 71 into c. 180 is entitled to weight in assessing the voting rights of members of a charitable corporation. See *Breen* v. *Wollaston Golf Club*, 368 Mass. 776, 778 (1975). Section 3 of G. L. c. 180, which refers in certain respects to G. L. c. 156B, expressly authorizes separate classes of members of a c. 180 corporation and acknowledges that the voting rights of each class may differ. The plaintiffs concede that G. L. c. 180 does not require votes by class in the case of a by-law amendment which adversely affects one group of members. The Legislature has expressed the applicable

public policy in this area, and we should not substitute our judgment lightly on this question.[5]

In assessing whether the plaintiffs have been subjected to such unfair treatment that the equitable powers of the courts should be exercised in their favor, we must weigh the nature of their grievance. They complain about the absence of a class vote on a question which neither a statute nor the hospital's by-laws required be put to a class vote. Each plaintiff acquired annual membership in the corporation by the payment of one dollar, never had any proprietary interest in the assets of the corporation, and thus would lose nothing of financial value by a by-law amendment disenfranchising them. When the problem is so analyzed, the by-law amendment is not "inconsistent with principles of natural justice." See *Espinola* v. *Club Liberdade, Inc., supra* at 26.

4. We come finally to the plaintiffs' contention that their allegations concerning the course of conduct followed by the defendants are sufficient to state a claim warranting an invalidation of the disenfranchising amendment. The answer to this question depends on whether the complaint, as proposed to be amended, failed in all respects to allege facts which might justify "any form of relief, even though the particular relief ... [the plaintiffs have] demanded and the theory on which ... [they seem] to rely may not be appropriate." *Nader* v. *Citron, ante,* 96, 104 (1977). We believe that certain of the plaintiffs have alleged facts

[5] The plaintiffs do not rely on the incorporation of G. L. c. 156B, § 8, into G. L. c. 180. See G. L. c. 180, § 10A. Section 8 (*b*) of G. L. c. 156B makes G. L. c. 156B, § 71, applicable to protect the rights of a class of stock against a multiclass vote on certain proposed action which would adversely affect that class. Although § 8 (*b*) refers to by-laws and articles of organization, § 71 refers only to amendments to articles of organization, a matter not involved in this case. We should not be understood, however, to have decided that § 8 (*b*) is inapplicable to the facts of this case. The plaintiffs simply do not argue the point.

We have assumed in this opinion, without deciding, that a vote to create two separate classes of members, one with greater rights than the other, should be treated as if those classes already existed and thus any required vote by class would apply to the vote creating those classes.

which, if more fully developed and proved at trial, might justify relief in their favor.

Two of the plaintiffs attended the September 9 meeting for the purpose of objecting to a proposed by-law provision which would limit nominees to those persons proposed by the nominating committee. One of the plaintiffs was handed a copy of a document which was entitled in part "BYLAWS (... as amended to and including September 9, 1974) ...." He noticed that many provisions were different from the proposed by-laws he received in the mail. The other plaintiff chose not to take a copy of the by-laws which was being distributed. The presiding officer "allowed less than ten (10) minutes to read and study the new proposed 'BYLAWS.'" In response to a question from someone as to what the substantial changes were, either the presiding officer or the chairman of the by-law committee "stated that they were too numerous and would take too much time to explain," but that two changes were increasing the size of the board of directors and allowing nominations from the floor. No one stated that the by-laws created a separate class of nonvoting members, consisting of employees of the hospital, their spouses and children. A motion to adopt the by-laws was passed without dissent. The complaint, as proposed to be amended, alleges that the plaintiffs in attendance "were induced to vote in favor of" the by-laws because they relied "on the accuracy of the proposed bylaws received in the mail and the statements of the defendants (including their silence) concerning the substantial changes ...."

We think that the allegations of the complaint were sufficient to survive a motion to dismiss. The by-laws of a corporation are a contract between the corporation and its members. *Massachusetts Charitable Mechanic Ass'n.* v. *Beede,* 320 Mass. 601, 608 (1947). *Bushway Ice Cream Co.* v. *Fred H. Bean Co.,* 284 Mass. 239, 245 (1933). Of course, the by-laws may be amended according to their lawful provisions concerning amendment. In this case, we have indicated that the procedures followed by the corporation in proposing the amendments were proper. However, the

directors of a corporation have a fiduciary duty of fair dealing with its members or shareholders in situations where corporate action is being proposed which may affect one or more shareholders adversely. We have expressed an even higher standard than fair dealing in the case of a close corporation. See *Wilkes* v. *Springside Nursing Home, Inc.,* 370 Mass. 842, 848-849, 850-851 (1976); *Donahue* v. *Rodd Electrotype Co.,* 367 Mass. 578, 592-594 (1975).

The allegations of the complaint are sufficient to put the defendants on notice that the plaintiffs are claiming that, in seeking to disenfranchise the employee members of the corporation, some or all of the officers and directors of the corporation failed to meet their fiduciary obligations to the plaintiffs. The claim rests in part on the assertion that the defendants did not disclose the proposal to create a class of nonvoting members, even when the question of significant changes was inquired about at the meeting.[6]

One theory expressed by the plaintiffs rests on an allegation of fraud. We think the complaint, as proposed to be amended, shows sufficient aspects of reliance and damage to meet the requirement of Mass. R. Civ. P. 9 (b), 365 Mass. 751 (1974), that the circumstances constituting fraud be stated with particularity. See *Friedman* v. *Jablonski,* 371 Mass. 482, 488 (1976).

It will be a matter for proof at trial, of course, whether any of the defendants in fact acted fraudulently or whether, in all the circumstances, any defendant acted in bad faith or, even if not in bad faith, failed to fulfil a fiduciary obligation to disclose the proposal to disenfranchise employee members of the hospital. Such a determination can be made only on the entire circumstances which will be disclosed at trial.[7]

---

[6] The defendants' brief nowhere comes to grips with the allegation that, on inquiry concerning significant by-law changes, no one disclosed explicitly the proposal to disenfranchise employee members.

[7] It is doubtful that a case for invalidation of the by-law amendment can be made on behalf of those employee members who became members within sixty days prior to the September 9 meeting because they could not vote at that meeting. Also, those members who did not attend

The defendants argue that a member of a charitable corporation sustains no actionable damage in losing his right to vote.[8] Such a member, of course, has no property interest to protect. However, the plaintiffs became members of the hospital voluntarily by the payment of dues. Each had a vote concerning the operation of the hospital to the extent the by-laws provided. That right to vote should not be taken away except in accordance with lawful procedures and practices. As we noted earlier, we are not concerned with the question whether the plaintiffs could have been excluded from membership in the corporation. They were members already.

5. The judgment dismissing the complaint is reversed, and the plaintiffs' motion to amend the complaint is to be allowed.

*So ordered.*

the meeting cannot have relied on any failure to disclose facts at that
meeting. However, those plaintiffs who attended the meeting may be
successful in persuading the judge that the only effective remedy for
any wrong committed is to invalidate the disenfranchisement provision
in the by-laws adopted on September 9, leaving the corporation the option of seeking to amend its by-laws in this respect at a subsequent
meeting at which all then current members of the corporation can vote.

  [8] Although the complaint does not allege that the corporation was
formed for charitable purposes, the defendants' brief refers to the hospital as a charitable corporation.