Connors, Thomas A., J.
I. INTRODUCTION
This case arises out of the alleged sexual abuse of the plaintiff Jay Martin (“Martin”) by the leaders of his Boy Scout troop, Lawrence Brehaut (“Brehaut”), William Berman (“Berman”), and Steven Perry (“Perry”) between approximately 1974 and 1979. On May 17, 2004, Martin filed the complaint in this present action against the defendant Boston Minuteman Council, Inc. (“BMC"), alleging claims for negligence, negligent supervision, negligent infliction of emotional distress, and assault and battery. On December 6, 2005, BMC moved for summary judgment asserting that each of the claims are barred by the statute of limitations under G.L.c. 260, §4C. On December 20, 2005, Martin filed an opposition to BMC’s motion for summary judgment. On that same day, Martin filed a motion to amend the complaint to add a claim for breach of fiduciary duty. On January 19, 2006, BMC filed an opposition to the motion to amend. For the following reasons, BMC’s motion for summary judgment is ALLOWED, and Martin’s motion to amend the complaint is DENIED.
II. BACKGROUND
The facts are summarized in the light most favorable to the plaintiff. Martin was bom on April 16,1968 under the name Eric Schneider. Martin later changed his name when he reached adulthood. Martin joined the Cub Scouts in second grade and later became a Boy Scout. Soon after j oining the Boy Scouts, Brehaut, Berman, and Perry began sexually abusing Martin. The sexual abuse occurred from approximately 1974 to 1979, beginning when Martin was approximately six to seven years old, and ending when Martin was either eleven or twelve years old. There were hundreds of incidents of abuse, occurring two to three times a week at different locations. The abuse occurred at Brehaut’s photo lab, at Boy Scout meeting locations, at the Boy Scout headquarters, and at various Boy Scout camping areas. The multiple and horrific episodes of sexual assaults upon Martin included instances in which he was forced to consume alcohol and dmgs, was photographed in costumes and in states of undress, and was forced to perform sexual acts with other children.
In or around 1980, Martin confronted Brehaut with a gun and told him that “if he ever came near [him] again [he’d] kill him.” At some point in 1980 or 1981, Martin left the Boy Scouts. At some time soon thereafter, Martin became heavily involved in dmgs, alcohol, and in criminal activity. During 1984, Martin testifled before a grand jury, convened to consider sexual abuse allegations made against Brehaut. That grand jury proceeding ultimately led to Brehaut’s indictment.-[1] Between 1984 and 1990, Martin experienced repeated “rage attacks” directed toward his parents, often times relating to his sexual abuse.
In 1992, at the age of twenty-four, Martin pled guilty to charges of masked armed robbery. While awaiting his sentencing hearing, Martin met with Dr. Stephen D. Grubman-Black (“Grubman-Black”), who prepared an evaluation report to support Martin’s request for leniency in sentencing. Martin disclosed instances of his past sexual abuse to Grubman-Black, and spoke with Grubman-Black about how the abuse had influenced his life. Martin told Grubman-Black that he believed that his learning difficulties and his dependencies on dmgs resulted from the sexual abuse. Following their meeting, Grubman-Black drafted an evaluation report that detailed the instances of sexual abuse and identified some of the psychological effects of the abuse. Martin saw the evaluation report back in 1992, and his deposition testimony confirms that he read at least a portion of the report.[2]
In preparation for his sentencing hearing, Martin also met with Roberta S. Lemer (“Lemer”), the Social Services Coordinator for the Committee for Public Counsel Services, on two occasions. Lemer was also present during the clinical evaluation conducted by Grubman-Black. Based on her professional observation and assessment, and the input of others, including Grubman-Black, Lerner prepared Martin’s pre-sentencing memorandum, which detailed Martin’s abuse and the effects of his victimization. Martin asserts that he never read the pre-sentencing memorandum.
After his release from his sentence for the robbery conviction, Martin left the Commonwealth and relocated to Colorado. He contends that it was only when he began to see a psychotherapist in July of2002, that he recognized his psychological injuries, which he realized had been caused by Brehaut, Berman, Perry, and BMC. On May 17, 2004, Martin filed suit against BMC. At the time of the filing of the complaint, Martin was thirty-seven years old.
III.DISCUSSION I. Standard
The Court will grant summary judgment when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Mass.RCiv.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence' of a triable issue, and that the moving parly is entitled to judgment as a matter of law. Pederson v. Time, Inc., *571 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opponent’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17. If the moving party submits evidence that indicates that the plaintiff cannot demonstrate the essential elements of a claim, summary judgment should be granted. See Kourouvacilis, 410 Mass. at 711-12.
II. Application A. Motion for Summary Judgment
G.L.c. 260, §4C provides a statute of limitations that requires that all civil actions based on the sexual abuse of a minor must be:
[CJommenced within three years of the acts alleged to have caused an injury or condition or within three years of the time the victim discovered or reasonably should have discovered that an emotional or psychological injury or condition was caused by said act whichever period expires later; provided, however, that the time limit for commencement of an action under this section is tolled for a child until the child reaches eighteen years of age.
The language of G.L.c. 260, §4C extends the so-called “discovery rule” to child sexual abuse cases. See Phinney v. Morgan 39 Mass.App.Ct. 202, 205 (1995). Under the discovery rule, the limitations period does not accrue until “the connection between the defendant’s actions and the plaintiffs alleged injury becomes either known or knowable.” Doe v. Creighton, 439 Mass. 281, 283 (2003). Stated another way, the statute of limitations does not begin to run until the plaintiff has “(1) knowledge or sufficient notice that she was harmed and (2) knowledge or sufficient notice of what the cause of harm was.” Doe v. Harbor Sch., Inc., 63 Mass.App.Ct. 337, 343 (2005) (quoting Bowen v. Eli Lilly & Co., 408 Mass. 204, 208 (1990)).[3]
In this case, BMC has pled the statute of limitations as a defense to Martin’s claim. The issue therefore is whether Martin discovered, or reasonably should have discovered, both his psychological injuries and the cause of those injuries, at some point more than three years before the filing of this lawsuit in 2004. Martin first bears the burden of proving that he did not discover, nor should he have reasonably discovered, his alleged injuries until July of 2002. See Riley v. Presnell, 409 Mass. 239, 243-44 (1991) (holding that the plaintiff bears the burden when relying on the discovery rule). Next, Martin bears the burden of “proving both an actual lack of causal knowledge and the objective reasonableness of that lack of knowledge.” Doe v. Creighton, 439 Mass. at 283.
Normally an issue of what a plaintiff knew or should have known is a factual question appropriate for a trier of fact. Id. at 283-84. However, in order for a plaintiff “to survive a defendant’s motion for summary judgment based on the limitations period, the plaintiff must demonstrate a reasonable expectation of proving that her suit was timely filed.” Id. at 284. In the present case, Martin has failed to make this showing. Not only do the undisputed facts establish that by 1992 there was “sufficient notice” of both the psychological harm and cause, the evidence shows that Martin had subjective knowledge of both.
1. Recognition of the Harm
In sexual abuse cases involving the discovery rule, the statute of limitations is not triggered until the plaintiff knew or should have known of an “appreciable harm.” Ross v. Garabedian, 433 Mass. 360, 365 (2001). However, the plaintiff “need not apprehend the full extent or nature of an injury in order for a cause of action to accrue.” Phinney, 39 Mass.App.Ct. at 208; Ross, 433 Mass at 365. Instead, the statute of limitations is triggered when the plaintiff possessed a “modicum of knowledge” that he had suffered an appreciable harm. Phinney, 39 Mass.App.Ct. at 208.
In the instant case, Martin contends that while he was aware in the 1970s of his physical abuse, the resulting physical injuries, and the individuals who abused him, he was unaware that he had suffered any psychological harm until he underwent therapy in July of 2002. The undisputed facts, however, show otherwise. The information known by Martin in 1992 establishes that he was aware that he had experienced an appreciable psychological harm. Specifically, Martin’s meeting with Grubman-Black and Martin’s subsequent review of the evaluation report provided the basis for Martin’s awareness at the time. During his 1992 interview, Martin described specific incidents of sexual abuse and told Grubman-Black about some of the psychological symptoms. Following their interview, Grubman-Black drafted a report that detailed the incidents of abuse and its psychological impact. Near the conclusion of the evaluation report, Grub-man-Black wrote: “[Martin] is in need of a great deal of help.” He went on to write: “[Martin] appeared willing and able to take responsibility for his recovery.” Both the contents of the evaluation report and GrubmanBlack’s statement therein, indicate that Martin recognized that he was suffering from a psychological injury. Moreover, after Grubman-Black drafted the evaluation report, Martin read at least part of it.[4] Thus, Martin not only spoke with Grubman-Black about his psychological injuries, but Martin also read a portion of the evaluation report, the purpose of which was to establish the extent of the causal link between these injuries and the sexual abuse.
*572 The present case plainly does not involve a situation in which a victim of sexual abuse has repressed memories of that abuse. The horrific nature of the abuse and the resulting injuries did not prevent Martin from recognizing that he had been subjected to psychological harm. See Doe v. Creighton, 439 Mass. at 284 (stating that the court should focus on “the nature of the abusive conduct, the injuries that the abuse inflicted, and the effect that both would have had on ... a reasonable person”). The incidents of sexual abuse occurred on hundreds of occasions and caused various physical injuries to Martin, including bruises on his body and rectal pain and bleeding. During his deposition, Martin testified that after he left the Boy Scouts in or around 1981, the abuse affected his life by causing him to become very angry at Brehaut for causing him pain, as well as at his parents for not discovering the abuse. Martin testified that this “rage” that he “felt from inside” is still going on today. Deposition of Martin, Vol. II, p. 23, lines 5-8. Martin also admitted that the abuse caused him to become heavily involved in drugs, alcohol, and criminal activities. Id. at p. 20, lines 13-18. It is these psychological symptoms that Martin disclosed to Grubmán-Black in 1992, when he was twenty-four years old.
Finally, this case does not involve a circumstance in which the victim was unable to recognize that the abuser’s conduct represented sexual abuse. See Ross, 433 Mass. at 366 (holding that summary judgment was inappropriate because while the plaintiff knew that the defendant’s conduct was “contrary to accepted church or family morals,” a fact finder could have reasonably found that the plaintiff did not understand that the defendant’s conduct represented sexual abuse). Here, Martin recognized that Brehaut’s sexual abuse was criminal. Martin’s recognition was evidenced by his armed confrontation with Brehaut in or around 1980, and his testimony against Brehaut during the grand jury hearing in or around 1984.
While Martin may not have been fully aware of the complete extent of his psychological injury, the information known by him establishes that by 1992 he possessed more than a modicum of knowledge that he had been psychologically harmed. See Phinney, 39 Mass.App.Ct. at 208.
2. Recognition of Cause
Under the second prong of the discovery rule, Martin bears the burden of proving that “the nature of the abuse was such that it would cause an objectively reasonable person to fail to recognize the causal connection between it and the injuries that it caused.” Doe v. Creighton, 439 Mass. at 284. Martin has failed to satisfy this burden. Martin’s statements and actions, including his armed confrontation with Brehaut, his grand jury testimony, his interview with GrubmanBlack, and his subsequent review of the evaluation report, establish that he was aware of the causal connection between his psychological injuries and his sexual abuse.
To begin, the design and purpose behind Martin’s meeting with Grubman-Black evidences that Martin knew of the cause of his psychological injuries. Martin met with Grubman-Black to gain support for his plea for leniency on his impending armed robbery sentence, which was based upon the contention that his sexual abuse had negatively impacted his life psychologically and emotionally. To accept Martin’s contention that he did not recognize the cause of his psychological harm would require the court to conclude that Martin also did not realize the reason for his interview and the rationale behind his plea for leniency at his sentencing hearing. In addition, the evaluation report detailed the causal link between the psychological harm and the sexual abuse, and Martin read at least a portion of the report. Based on the purpose of the evaluation report, its substance, and Martin’s review of it, Martin possessed at least a modicum of knowledge of the causal link between the abuse and the psychological injury.
Moreover, the nature of the abuse and the injuries inflicted did not inhibit Martin from recognizing the cause of the psychological harm. See Doe v. Creighton, 439 Mass. at 284 (holding that the court’s analysis should focus on the nature of the abuse, injuries inflicted, and the effect of both). As discussed above, this is not a case involving repressed memories, or a situation in which the victim did not appreciate the wrongful nature of the conduct.
The undisputed material facts also establish that by 1992, Martin possessed a sufficient recognition of the relationship between the perpetrators and BMC. Martin knew that the three perpetrators were Boy Scout troop leaders, and that the abuse began when he entered the Boy Scouts and ended when he left the Boy Scouts. Martin also was aware that a large percentage of the abuse occurred during time periods allotted for Boy Scout activities and at locations owned by the Boy Scouts. Moreover, there is no evidence that BMC attempted to conceal its identity or that the nature of the abuse prevented Martin from recognizing the relationship between the perpetrators and BMC.
Furthermore, this court rejects Martin’s contention that the statute of limitations did not accrue until he recognized that BMC owed him an obligation and breached that obligation. The statute of limitations is not tolled because the plaintiff may not have identified the legal theory behind a potentially cognizable claim. See Doe v. Harbor Sch., Inc., 63 Mass.App.Ct. at 346 (stating that the limitations period is not tolled because the plaintiff is not “aware of the nature of the claims she might have against the [defendant]”). Permitting a tolling of the statute of limitations on this grounds could mean that the limitations period would start anew every time a cause of action was expanded or created by legislative action or development of the *573 common law. “Notice of likely cause is ordinarily enough to start the statute running. Thus, on notice, the potential litigant has the duty to discover from the legal, scientific, and medical communities whether the theory of causation is supportable and whether it supports a legal claim.” Fidler v. Eastman Kodak Co., 714 F.2d 192, 199 (1st Cir. 1983) (interpreting Massachusetts law in a products liability case under G.L.c. 260, §2A); see also Malapanis v. Shirazi, 21 Mass.App.Ct. 378, 384 (1986) (applying same reasoning in medical malpractice case).
In summary, the undisputed material facts establish that by 1992 there was “sufficient notice” of both the psychological harm and cause of that harm under the objective reasonable person standard. Given the status of Martin’s knowledge as to both the harm and its cause at least by 1992, there is no disputed issue of material fact as to tolling of the statute of limitations under G.L.c. 260, §4C.
B. Motion to Amend the Complaint
Martin has moved to amend his complaint to assert an additional claim against BMC for a breach of fiduciary duty. BMC has opposed Martin’s motion. Under Mass.R.Civ.P. 15(a), leave to amend is generally “freely given when justice so requires.” The court, however, has discretion to deny the motion when there is “undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing parly by virtue of allowance of the amendment, futility of amendment, etc.” Castellucci v. U.S. Fid. & Guar. Co., 372 Mass. 288, 290 (1977), quoting Foman v. Davis, 371 U.S. 178, 182 (1962). Despite the lenient policy set forth in Mass.R.Civ.P. 15(a), Martin’s motion to amend is denied because it is untimely, prejudicial, and futile.
Undue delay in asserting a claim is a sufficient justification by itself for denying a motion to amend, especially when the plaintiff is attempting to add a new theory of liability or a new party. Walsh v. Chestnut Hill Bank & Trust Co., 414 Mass. 283, 286-87 (1993); U.S. Leasing Corp. v. Chicopee, 402 Mass. 228, 233 (1988). In the present action, Martin filed the original complaint on May 17, 2004, and did not file the motion to amend until December 20, 2005. At that point in time, discovery in the case had concluded, and the tracking order deadline for Rule 15 motions had expired more than a year earlier on October 14, 2004. While delinquency alone is usually not determinative, the present case involves two other relevant considerations.
Martin’s motion to amend is also inappropriate because it was clearly tailored to defeat BMC’s motion for summary judgment. See Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996) (stating that a court may deny a motion to amend when it is an “attempt to alter the shape of the case in order to defeat summary judgment”); Kennedy v. Josephthal & Co., Inc. 814 F.2d 798, 806 (1st Cir. 1987) (affirming district court’s denial of motion to amend where the plaintiff filed the motion after the court took the application for summary judgment under advisement). Martin served his motion to amend the complaint on the same day that he served his opposition to BMC’s motion for summary judgment. No reason was given for the delay, notwithstanding the fact that both the nature of the case and BMC’s pleadings had clearly served notice at a much earlier point in time that the statute of limitations was a major issue. To permit Martin now to introduce a new theory of liability as an attempt to circumvent the statute of limitations would prejudice BMC, which has already prepared and presented its successful motion for summary judgment. As the United States District Court has stated: “as the defendant!) had filed and briefed [his] meritorious motion! 1 for summary judgment before the motion to amend was filed, it would be unfair to allow that motion and thus reward an evident effort to avoid an adverse ruling on the request for summary judgment.” Citizens to End Animal Suffering & Exploitation, Inc. v. New England Aquarium, 836 F.Sup. 45, 57 (D.Mass. 1993).
Finally and most importantly, Martin’s motion to amend the complaint must be denied because the proposed amendment would be futile. See Mathis v. Mass. Elec. Co., 409 Mass. 256, 264 (1991); Castellucci, 372 Mass. 288, 290 (1977). “ ‘Futility’ means that the complaint, as amended, would fail to state a claim upon which relief could be granted.” Glassman, 90 F.3d at 623; see also Jessie v. Boynton, 372 Mass. 293, 295 (1977). The proposed amendment to the complaint does not state a viable claim because the additional claim would also be barred by the statute of limitations.
Assuming that a fiduciary relationship did exist between BMC and Martin, the statute of limitations expired before Martin filed his original complaint. The analysis of the period of limitations for the breach of fiduciary duty claim is different than for the claims addressed above in the summary judgment section. Instead of a constructive knowledge or objective reasonableness standard, the statute of limitations does not accrue on a fiduciary duty claim until the injured party “actually learns that the fiduciary has breached the trust.” Doe v. Harbor Sch., Inc 63 Mass.App.Ct. at 345, further appellate review granted, 445 Mass. 1101.[5] In explaining the test, the Appeals Court stated:
[T]he relevant question is whether the plaintiff actually knew before [the alleged time of discovery], that [the defendant] was not just causing her psychological harm but was by his acts breaching the fiduciary obligations he had assumed. And where psychological injuries are at issue, knowledge of psychological harm flowing from another’s conduct or even knowledge that the other person’s conduct *574 is wrong is not knowledge that the conduct violates the other person’s fiduciary obligations.
Id. at 348.
Under this heightened standard, there is no accrual when the plaintiff has merely recognized the psychological injury and the connection between the injury and the defendant’s wrongful action. While the plaintiff must have recognized both of these, this passage in Doe and the cases cited, indicate that the period of limitations does not begin until the plaintiff appreciates that there has been a breach of some obligation that the defendant had assumed.
As illustrated above, the undisputed material facts establish that Martin knew by 1992 that Brehaut’s actions had caused him psychological harm. By this point in time, Martin also knew that Brehaut’s actions were illegal. Thus, it is clear by implication that Martin also had actual knowledge at this time that Brehaut had breached any and every possible obligation that he owed Martin as his scoutmaster.
Furthermore, Brehaut’s affiliation with the BMC was never hidden or concealed. The deposition testimony of both Martin and Grubman-Black reveals that by 1992 Martin was aware that the perpetrators of the abuse were the leaders of his Boy Scout troop, he knew that the abuse occurred during his involvement with the Boy Scouts, and he recognized that a large percentage of the abuse took place at Boy Scout locations and during Boy Scout meeting.[6] Given Martin’s knowledge of the relationship between the abusers and the Boy Scouts, Martin had actual knowledge by 1992 that any obligation that BMC may have owed to him would have been breached.
As previously noted, accrual under the statute of limitations is not based on when the plaintiff discovers a legal theory. See Fidler, 714 F.2d at 199 (interpreting Massachusetts law); Malapanis, 21 Mass.App.Ct. at 384. The statute of limitations accrues based on the plaintiffs knowledge of the facts that form the basis of the legal theory.
Based on the three grounds set forth above, Martin’s motion to amend is denied.
IV. ORDER
For the foregoing reasons, it is hereby ORDERED that summary judgment enter for defendant Boston Minuteman Council, Inc. It is further ORDERED that Martin’s motion to amend the complaint is DENIED.

 Brehaut was ultimately convicted on Middlesex County Criminal Indictment Number 85-229, which charged him with both rape of a child, and posing a child in a state of nudity. Brehaut was sentenced to two concurrent terms of not less than ten years and not more than fifteen years. Brehaut died in prison. Berman and Perry have never been criminally charged.

 During his deposition on April 5, 2005, the following exchanges took place between the questioner, BMC’s attorney, and the answerer, Martin. Question: “Did you see [Grub-man-Black’s report] back in the 1992 era, when you were sentenced in connection with the criminal case?” Answer: “Correct.” Question: “If you recall, when you read it back then, is there anything you disagreed with that the doctor wrote?” Answer: “I don’t know. I don’t even remember the contents of it.” Deposition of Jay Martin, Vol. II, p. 34, lines 23-24; p. 35, lines 1-7.
Later during the same deposition, the following exchange took place. Question: “You also told [Grubman — Black] about the thrust of the knife with thrusts of his penis against your throat, right?” Answer: “I don’t recall the incident like that, but I do recall him putting it in the report like that,” Id. at p. 36, lines 14-18.

 The “sufficient notice” element of the standard requires the court to examine the situation from the objective perspective of “a reasonable person who has been subjected to the conduct which forms the basis for the plaintiffs complaint.” Doe v. Creighton, 439 Mass. at 284 (quoting Riley v. Presnell, 409 Mass. 239, 245 (1991)).

 In his opposition to summary judgment, Martin submitted an affidavit stating that he did not read the evaluation report until 2005. This affidavit squarely contradicts his deposition testimony as referenced in Footnote 2, and is therefore not taken into consideration. See O'Brien v. Analog Devices, Inc., 34 Mass.App.Ct. 905, 906 (1993) (holding that a plaintiff cannot create an issue of material fact to defeat summary judgment through an affidavit that contradicts prior testimony).

 The further appellate review in Doe v. Harbor Sch., Inc. is limited to the question of breach of fiduciary duly.

 During the deposition of Martin on April 4, 2005, the following exchanges took place between the questioner, BMC’s attorney, and the answerer, Martin.
Question: “But it would be fair to say that from 1984 up until 1990, there were occasions when you got upset at your mom and your dad because of the abuse that happened to you at the hands of Mr. Brehaut?” Answer: “I don’t know if I’d say more, because at one point very early on when it began, I asked not to have to go anymore and, you know, they told me — kind of yelled at me and told me I was stupid for — you know, he’s trying to help me out. Here this guy’s doing all this for me, and — so that’s more what I was angry with them at.” Question: “Because they forced you to stay in the Scouts?” Answer: “Right.” Question: “And the words that you would say [to your parents] would reference the fact thatyou had been abused while you were in the Scouts?” Answer: “Right." Deposition of Martin, Vol. I, p. 78, lines 7-20; p.79, lines 8-11.
Question: “You also said abuse occurred at the church; is that right?” Answer: “Right.” Question: “Would these be on occasions where there were troop meetings conducted?” Answer: “Right.” Question: “Was there any abuse that ever took place at the church on nights other than when there were troop meetings?” Answer: “No.” Question: “How was it thatyou first started going to the darkroom or [Brehaut] asking you to go with him to the darkroom, his photo lab, whatever you want to call it?” Answer: “He initially told my parents that he wanted me to work on my photography merit badge.” Question: “Did most of the incidents of physical abuse with Mr. Brehaut happen at his photo lab?” Answer: “Most of them were at the church or at the Boy Scout camp in Saugus.” Question: ‘Was there any incident that actually really happened at the Boy Scouts offices in Stoneham?” Answer: “Yes.” Question: “Was that just one or two instances?” Answer: “I would say four or five.” Deposition of Martin, Vol. I, p. 120, lines 3-12; p. 122, lines 1-6; p. 124, lines 15-18; p. 125, lines 17-21.
Question: “After [you left the Boy Scouts], did you tell your parents you were going to troop meetings or other things when, in fact, in effect, you weren’t, or did you just say I quit?” Answer: “I believe I told them I quit, and then it was very shortly after that that I got myself out of the abuse. It *575 was at that point where I didn’t see Larry anymore." Deposition of Martin, Vol. L, p. 152, lines 3-10.
During the deposition of Grubman-Black on August 11, 2005, the following exchanges took place between the questioner, BMC’s attorney, and the answerer, Grubman-Black. Question: “[C]an you give just a sense ... of what [Martin] told you happen to him?" Answer: “]0]ver a period of years— and if I’m wrong about time, but it seemed to me that it was about six years — he was tortured and repeatedly raped by I think it was a Boy Scout leader. Question: ’’[Martin] recalled that he had either met or become involved with Larry [Brehaut] though the Boy Scouts; is that correct?” Answer: “That is correct, yes.”. Deposition of Grubman-Black, p.27, lines 23-24, p. 28, line 1; p. 28, lines 5-8; p. 32, lines 1-4.